FROM CRAVEN.
"The jurors, etc., that Donum, a slave, the property of E. S. I., Tom, a slave, the property of S. F. (and six others) on, etc., at, etc., unlawfully did arm themselves with guns and fire-arms, and being so armed with guns and fire-arms as aforesaid, unlawfully did assemble and meet together, and being so unlawfully assembled, etc., did then and there feloniously and wickedly consult, advise, and conspire, to rebel and make insurrection, contrary to the form of the statute, etc.
"And the jurors, etc., do further present, that the said Tom, etc., the said Donum, etc. (and six others), afterwards, etc., did unlawfully arm themselves with guns and fire-arms, and being so armed, etc., did meet and assemble, etc., then and there feloniously and wickedly did plot and conspire the murder of one William Duncan, contrary to the form of the statute, etc."
Upon this indictment, Donum was first tried and acquitted.
On the trial of the prisoner no evidence was offered on the (570) first count. The enquiry was confined solely to a plot, alleged to have been made between the prisoner and Donum to murder Duncan, without any ulterior views to an insurrection. For the prisoner, the record of Donum's acquittal was given in evidence, and his counsel contended that it required two persons to commit the crime charged, if the jury should think that the evidence inculpating the prisoner related only to a conspiracy with Donum, and with no other, then the record of his acquittal was conclusive evidence that he was innocent, and they could not find the prisoner guilty.
His Honor, Judge DONNELL, instructed the jury that the record of Donum's acquittal was not, upon this trial, conclusive, but was strong prima facie
evidence that Donum was not guilty, so far as his guilt was a necessary fact in establishing that of the prisoner's. That the prisoner could not be found guilty from the very nature of the charge, unless the jury were satisfied of the guilt of another of the persons charged in the indictment, as it required the concurrent guilt of two to commit the offense; and that, in giving to the record of Donum's acquittal the full weight to which it was entitled, as the finding of another jury on the very point in issue, they should still be fully satisfied, from the whole *Page 372 
evidence before them, of the guilt of the prisoner in plotting and conspiring with Donum the murder of Duncan, then they might find him guilty.
The prisoner was convicted, and judgment of death was pronounced, from which he appealed.
The words of the act of 1802 (Rev. ch. 618), "If any number of slaves shall plot or conspire the murder of any person whatsoever, they shall suffer death," upon which the second count of the indictment is drawn, do by themselves create a substantive offense. Arguments from the context have been urged to show that they are connected with the preceding words: "Shall conspire to rebel, or make insurrection," and that no conspiracy to murder is within the act, unless it have also for its object a change of the conspirator's state of servitude.
The Court certainly is not inclined to tear any part of a penal law from its context to make it more severe. If the obvious sense of particular words could be restrained by the general purview of the act, the Court would not feel at liberty, but bound to put the mildest interpretation on them. That would be to obey the words of the Legislature in their true meaning; that is, as collected from all the words used.
But we cannot disobey the plain mandate of a statute, expressed in a distinct and substantive manner; unless, indeed, the context does show that the obvious sense is not the true sense. Here two different kinds of conspiracy are expressly and severally mentioned in the first section: "If any number of slaves shall conspire to rebel or make insurrection, or shall conspire or plot the murder of any person whatsoever." The structure of the sentence makes the offences several.
It has been said that as the act relates to offences committed by slaves, it embraces only such as are connected with their condition as such. That inference by no means follows. It would be to suppose that the legislature would make no act criminal in a slave, which is not also criminal if done by a free person, unless it had a view to his (572) enfranchisement, and is contradicted by the acts regulating the trading of slaves, besides many others of police.
Nor can the Court yield to the argument that the legislature did not intend to apply a higher scale of morality to slaves than to free persons by making a bare conspiracy to murder, without a rebellious intent, a capital felony. That is a consideration not to be addressed to a Court, because it does not aid in discovering the meaning of a law; but rather to the law-maker, in settling the policy of it. Yet it would seem obvious *Page 373 
to either tribunal, that the most debased or licentious a class of society is, the more rigorous must be the penal rules of restraint.
The second and third sections relate to accessories to a conspiracy to rebel or make insurrection. It is thence inferred at the bar that the principal offence created in the first section must be correlative, and likewise confined to a conspiracy to rebel or make insurrection. The argument, I think, is the other way. It would, indeed, be absurd to create the offence of the accessory, where there is no principal offender. But that is not the case here. The first section does create the specific crime of conspiring to rebel, to which the two following refer. It is remarkable, however, that the two last sections drop the words "plot or conspire to murder"? What is the inference from that? Certainly, that being accessory to that species of conspiracy shall not be a felony, but left at common law; but not that those words, omitted in the second and third section, should not, when used in the first section, create in that section the principal felony of conspiring to murder.
Another consideration presses itself on our notice. The crime of conspiring among slaves against the lives of those to whom they owe immediate domestic allegiance is, though not of so extensive consequence, more to be apprehended than that of general insurrection. It is more likely to be of frequent occurrence, and is more dangerous than the other, because it is not so easy of resistance. It cannot be (573) doubted that the Legislature had in the passage of this act a care of the lives of those exercising dominion over slaves. Yet, how could a Court put such a meaning upon the terms employed, if their general and more extended signification is imported by them, per se, be once limited as contended for? If the murder meant a murder growing out of a conspiracy to rebel, then a conspiracy to murder the master, much less any other member of his family, would be out of the act. For the conspiracy to rebel surely means an attempt to throw off, not the particular allegiance of the master or mistress, but the general allegiance to the country, by subverting the government, or that principle of it which fixes their servile condition.
I therefore think the opinion of the Superior Court right on this point.
The other question is, whether the acquittal of one of two persons changed nominatim in the same indictment with a conspiracy, is an acquittal of the other. In this indictment six are charged. The case states that the evidence went only to a conspiracy between Tom and Donum, yet the jury found Tom guilty generally. That might well be done, though Donum were not guilty; because it is sufficient to show a conspiracy between Tom and any one of the others. If the case rested there, the judgment would be without difficulty affirmed; for this Court *Page 374 
cannot grant a new trial, for the reason that the verdict is against evidence. But the Court below instructed the jury that they might convict the prisoner, although they believed all the other persons, except Donum, to be not guilty, notwithstanding the previous acquittal of Donum upon the same indictment. The case is, therefore, upon the instructions given, the same as if Donum and the prisoner were the only defendants.
Conspiracy being a crime, requiring the guilty cooperation of two, at least, to constitute it, in which there is a mutual dependence (574) of the guilt of each person upon that of the other, principle would seem to demand that all the accused should be jointly tried and convicted, or acquitted. In other cases of dependent crimes, that upon which the rest depends must be first established. Such is the law between principal and accessory. The reason is that there may be as full defense as possible upon the very point of the principal's guilt, by that principal himself, who is best able to make it. To make that rule effectual, it became necessary to establish another that, but by the accessory's own consent, no proof of the principal's guilt should be heard against him until it was first established against the principal himself. The rule arises out of the nature of dependent criminality. Now conspirators may be said to be co-principals. The guilt of both must concur to constitute that of either; and it must consist of a joint act, and it makes one crime in both. As the trial of one need not precede that of the other, the trial of both ought to be concurrent. I think it more than probable that anciently such was the course. But, clearly, now it is otherwise. There are many precedents of the separate trial of persons indicted for offenses that could not be committed by less than two.Rex v. Sudbury, 1 Lord Raymond, 484; S. c., 12 Mod., 262; Rex v.Kinnersly, 1 Str., 193; Rex v. Niccolls, 2 Str., 1227. It is too late now to question it.
But it can never follow from those cases that where one of the persons, the establishment of whose guilt is essential to the conviction of the other, has been legally acquitted, the other does not thereby become discharged. It cannot be that a man can be held guilty to any purpose who has, in due course of law, been found not guilty. The analogy between this case and that of the accessory is strict. The acquittal of the principal is an immediate and absolute discharge of the accessory. For there can be no aid given to a deed when the deed itself was (575) never perpetrated. So, where guilt consists in the joint act or intent of two, and it is found that one of them did not joint act or act or intent, it is conclusive as to both. For A could not conspire with B if the latter did not conspire at all. In all the cases, therefore, a verdict affirming the guilt of fewer persons than could commit the crime, *Page 375 
and affirming the innocence of all others charged, has been held to be an acquittal of all. That of Rex v. Sudbury, before cited, was for a riot. Two of the defendants were found guilty, and the others acquitted; upon which all were discharged. This case is fully recognized in Rex v.Scott, 3 Bur., 1262, where six were indicted for a riot; two were not tried, two acquitted, and two convicted. There was judgment against the convicts, because the verdict must be held to find them guilty with the two not tried. If all had been acquitted but the two, Lord Mansfield's opinion would have agreed with Lord Holt's. The doctrine of this last case, it will be seen, is that some of the offenders may be punished before the guilt of all is established against all, and in that respect agrees with the previous cases of Kinnersly and Niccolls. These were indictments for conspiracy. In each of them one defendant was found guilty, but in one of them the other was dead, and in the other, not in Court. There were motions in arrest of judgment on the ground that both should be convicted, and that the dead man never could be, and the other never might be tried, or might be acquitted, which would make a contradiction in the record. The motions were overruled, because the guilt of the co-defendant was found, as against the convicted defendant, and there was then no repugnancy; and where the one was dead, there could not be another trial, and therefore no contradiction; and where one had not pleaded, though he was not concluded by the first verdict, and might traverse his own guilt and be subsequently acquitted, yet the possibility of it should not intercept the stroke of justice (576) on him already found guilty. This is the whole extent of those cases: That where one party has not been tried, and can or may never be tried, the other, being convicted, shall immediately suffer. But they neither touch the question what shall be the effect upon him who is attaint, of the subsequent trial and acquittal of the other defendant, nor the other question now before us, what shall be the effect of the previous acquittal of the other defendant. Upon those points, I have been able to find no adjudged case. But we are not left without analogies, equally instructive. An accessory may, at his own desire, be tried before the principal, and by consequence may be convicted and punished. Yet, where both have been attainted, the reversal of the attainder of the principal ipso facto reverses that of the accessory, and his heir may enter. (Lord Sanchar's case, 9 Rep., 117.) This follows from the dependent nature of the charge against the accessory. If a reversal, for mere error in law, of the principal's attainder thus operates in favor of the accessory, the conclusion seems to be a necessary one, that the subsequent acquittal of the principal by a jury shall have an equal effect. And as the accessory could not again be put upon trial, or, rather, convicted, for want of a conviction of the principal, the inference *Page 376 
cannot be avoided, that by such subsequent acquittal of the principal, the accessory is also acquitted. The corporal suffering cannot indeed be cancelled. But all the continuing consequences — corruption of blood, escheat, and the like — immediately cease. If the accessory may thus avail himself of the subsequently established innocence of the principal, much more would we expect the previous acquittal of the latter, to be the acquittal of the former. And so we find it immemorially held. And so, I think, it is in conspiracy and other like cases. A conviction and sentence of one only, are abrogated by the consequent acquittal of all others named, the indictment not being cum multis aliis. All the (577) remaining effects of the judgment cease; the character becomes purged, and the party's free law and competency ut vir bonus etlegalis, restored. And a previous acquittal of all the persons but one, between whom the conspiracy is laid, absolutely negatives the guilt of that one, and he stands thereby acquitted.
I have said that I find no case adjudged directly in point. But Rexv. Niccolls is much more fully reported than in Strange, in a note toRex v. Oxford, 13 East, 412. And the reasoning of Chief-Justice Lee, as there given, is strong to support the positions here taken. To illustrate his argument against the motion in arrest, the Chief Justice puts the case of an action of conspiracy, where one is found guilty upon issue joined, and the other demurs, and has judgment for him. "That shall not," he says, "discharge him who is attaint, if the cause of the demurrer do not go to the gist of the conspiracy." This certainly yields to the other side their postulate, and if one be acquitted, though not by the same inquest, the others shall be too. For the way in which he puts it is stronger than a direct assertion that if the demurrer went to the gist of the action, a judgment on it for the defendant, who put it in, would discharge him who was attaint. He takes it for granted, as a thing not to be disputed. If this be the case on demurrer, it must be also on a verdict. It is true, he is speaking of a civil action, in which judgment cannot be rendered against one defendant alone, as it may upon indictment. But I do not perceive any distinction growing out of that circumstance. The guilt of one defendant is, in both instances, established by a method, and at a time distinct from those by which the innocence of the other appears. The true principle is that both the guilt and innocence of the party attained are affirmed in different parts of the proceedings, and so the record is nugatory; and on (578) the side of humanity, innocence is presumed. It then amounts to the acquittal of him who was convicted, because the acquittal of the other is a bar to a second trial of either for that offense.
There are other instances, presenting a strong analogy. I allude to actions against several, in which one suffers judgment by default, and *Page 377 
the other pleads to issue, which is found for him. In cases of contract, a verdict for one enures to the benefit of both, because the contract alleged being joint, the verdict is a demonstration of record that it did not exist, and the final judgment is arrested. Porter v. Harris, 1 Lev., 63; Shrubb v. Barrett, 2 H. Bl., 28. It is otherwise generally, in torts and crimes, because they are joint and several. But even in torts, if the plea of one defendant be not personal to himself and several in its nature, but go to the whole action, the rule is the same as that in contracts. Brigs v. Greinfield, 1 Str., 610; S.C., 2 Ld. Ray., 1372. There two were sued in trespass for seizing and selling plaintiff's goods. One let judgment by default pass; the other pleaded a distress for rent, and the license and request of the plaintiff to sell the goods, and it was found for him. The judgment against the first was arrested, because it appeared upon the whole record that the plaintiff had no cause of action. Thus, the finding for one overrules the confession of the other in the same suit. These cases are exactly applicable. It is true that indictments for conspiracy are not to all intents joint; for, where more than two are charged, some may be acquitted, and the conviction of the rest, if two, will be good. But it is strictly joint, so far as respects the constitution of the offence by two. And if it appear in the record, in any manner, that two did not participate in the unlawful intent, all are discharged, because neither is guilty of that offence. The only departure from this has been, in passing sentence on one before another was convicted. But one has never been convicted after all (579) the others charged were acquitted, and we think cannot be.
If the acquittal of part and the conviction of part be by the same inquest, it is plain from the cases that all are acquitted, unless the number of convicts be sufficient to constitute the crime. The principal to be elicited from the cases, and the preceding course of reasoning satisfy my mind that with the exception of the intermediate infliction of punishment, between the conviction of one and the subsequent acquittal of another, there is no difference between the case of a trial of all by one jury, and the separate trial of each by different juries. The operation on one of the acquittal of the other does not arise from the mode of pronouncing it, but from the fact of the acquittal itself being in due course of law, the guilt of one being dependent upon that of the other.
For this reason the judgment of the Superior Court must be reversed. The judgment of this Court would be that the prisoner go without day, if only he and Donum were charged, because the acquittal of Donum would be his acquittal. But as others, not yet tried, are included in the indictment, we can only set aside the verdict for the erroneous instruction to the jury, and submit the case to a second jury to consider the *Page 378 
prisoner's guilt, as connected with that of the other defendants, exclusive of Donum.