William Sterling **ROSECRANS, Jr.,**
Appellant,

v.

**UNITED STATES of America,**
Appellee.

No. 23687.

United States Court of Appeals
Fifth Circuit.

May 26, 1967.

J. B. Stoner, Augusta, Ga., for appellant.

William J. Hamilton, Jr., First Asst. U. S. Atty., Jacksonville, Fla., Edward F. Boardman, U. S. Atty., Joseph W. Hatchett, Asst. U. S. Atty., Middle Dist. of Florida, for appellee.

Before PHILLIPS,* THORNBERRY and DYER, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

On March 12, 1964, a two-count indictment was returned against Rosecrans and five codefendants. The first count charged that on September 1, 1963, and continuing to the date of the return of the indictment, they, in violation of Title 18 U.S.C. § 241, did conspire "with each other and with divers other persons to the grand jury unknown" to injure, oppress, threaten and intimidate one Donald Godfrey, a negro citizen of the United States, and other persons similarly situated, in the free exercise and enjoyment of a right secured to them by the Constitution of the United States, namely, a right to attend the Lackawanna Public School and other public schools in Duval County, Florida, pursuant to a permanent injunctive decree of the United States District Court for the Middle District of Florida. The second count charged that on February 16, 1964, by threats and force, they, in violation of Title 18 U.S.C. § 1509, did unlawfully prevent, obstruct, impede and interfere with, and did unlawfully attempt to obstruct, impede and interfere with the due exercise of rights of Godfrey and others similarly situated under a permanent injunctive decree of the United States District Court for the Middle District of Florida, entered on May 8, 1963, in a case entitled Braxton, et al. v.

---

* Of the Tenth Circuit, sitting by designation.

Board of Public Instruction of Duval County, Florida, Number 4598–Civil–J.[1]

On March 13, 1964, Rosecrans was arraigned and entered pleas of guilty to each count of the indictment, and on April 17, 1964, he was sentenced to the custody of the Attorney General of the United States for a period of seven years. The five codefendants were tried on both counts of the indictment. The trial commenced on June 30 and was completed on July 5, 1964. The jury found one defendant not guilty on each count of the indictment. As to the remaining four defendants, it found one not guilty on the second count, and as to him on the first count and the other three on both counts, the jury were unable to agree and a mistrial was declared.

Such remaining four defendants were again tried in November, 1964, and the jury found the defendant acquitted at the first trial on Count Two not guilty on Count One, and each of the other three defendants not guilty on both Count One and Count Two.

Rosecrans testified as a witness for the United States at the first trial. He was called as a witness for the United States at the second trial, but successfully invoked his privilege not to incriminate himself under the Fifth Amendment.

On March 30, 1965, Rosecrans filed a motion under 28 U.S.C.A. § 2255 to vacate his sentence on the following grounds:

1. That the plea of guilty was involuntary;

2. That each count of the indictment was fatally defective;

3. That the subsequent acquittal of his five codefendants rendered void the sentence imposed on him.

On March 3, 1964, L. O. Davis, Jr., Sheriff of St. John's County, Florida, and Oliver Weatherholt, a Special Agent of the Florida Sheriff's Bureau, took Rosecrans into custody near St. Augustine, Florida, as a suspect in a bombing on the right of way of the Florida East Coast Railway. He was questioned by Davis and Weatherholt respecting the railroad bombing. He told them he was wanted in Jacksonville for the bombing of a negro home and admitted he knew how to use dynamite. Davis and Weatherholt did not question him with respect to the Jacksonville bombing.

On March 3, 1964, John J. Cunningham, who was then a Detective Sergeant in the office of the Sheriff of Duval County, Florida, received information[2] that Rosecrans was in custody at the jail of St. John's County, Florida. The Duval County Sheriff and agents of the Federal Bureau of Investigation[3] were endeavoring to locate Rosecrans as a suspect in the bombing of a negro home in Jacksonville. Cunningham advised William Johnson, an agent of the F. B. I., that Rosecrans was so in custody, and Cunningham, Johnson, and two other F. B. I. agents went to St. Augustine, arriving there about 3:30 p. m. After talking with Davis and Weatherholt for about two hours, they were permitted to interview Rosecrans. They interrogated him with respect to the bombing of the

---

1. The first count was based on 18 U.S.C.A. § 241, which makes it an offense for two or more persons to conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or the laws of the United States, or because of his having so exercised the same. It provides that the punishment for such an offense shall be a fine of not more than $5,000, or imprisonment for not more than 10 years, or both.

   The second count was based on 18 U.S. C.A. § 1509, which provides: "Whoever, by threats or force, willfully prevents, ob-

structs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights * * * under any order, judgment, or decree of a court of the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

2. The information came to him from a confidential source. It did not come from Davis, Weatherholt, or any other state officer.

3. Hereinafter referred to as the F. B. I.

negro home. Rosecrans admitted his possession of dynamite, and that he had fled from his house trailer home near Jacksonville when he observed men whom he thought were F. B. I. agents making a search about his trailer and the vicinity thereof. He then had dynamite in the trailer and had buried some in the vicinity of the trailer.

The following day, March 4, 1964, Cunningham and the F. B. I. agents returned to St. Augustine, arriving about 8 a. m. However, they were not able to talk with Rosecrans until about 10:30 a. m. At that hour Davis brought Rosecrans into the interrogation room and told Cunningham and the F. B. I. agents that Rosecrans was ready to make a statement, but wanted the statement to be made to him (Davis).

At that interview, Rosecrans admitted to Cunningham and the F. B. I. agents that he and other persons participated in the bombing of the negro home in Jacksonville, but refused to identify the other persons. His oral statements were reduced to writing by one of the agents. From time to time, when the writing of a portion of the statement was finished, the agent read it to Rosecrans. When the writing of the statement was completed, the agent read the entire statement to Rosecrans. Rosecrans then read the statement himself. Certain changes were made therein at his request and he then initialed each page of the statement and signed it.

The F. B. I. agents then arrested Rosecrans, provided him with a meal, transported him to Jacksonville, and there took him before a United States Commissioner. On inquiry by the Commissioner as to whether he had a lawyer, Rosecrans replied he had employed J. B. Stoner of Augusta, Georgia. The Commissioner then continued the preliminary hearing until Stoner could be present.

Rosecrans was confined in the Duval County Jail, where the F. B. I. agents interviewed him almost daily from March 5 to March 9, inclusive. On March 9, he gave them a further written statement in which he identified by name certain persons and related how they participated with him in the theft of the dynamite used by them, in discussions and demonstrations of its action, in the planning and construction of the bomb on February 15, 1964, and finally in the delivery of the explosives to the Godfrey home.

While Stoner did not directly contact Rosecrans during the period from March 4 to March 10, inclusive, a Jacksonville lawyer acting for Stoner did visit Rosecrans at the Duval County Jail several times during that period.

On March 10, 1964, Rosecrans was again taken before the United States Commissioner. He was advised that a conspiracy charge would be lodged against him. The Commissioner told Rosecrans no lawyer had contacted him in Rosecrans' behalf. Another lawyer appeared at the hearing and stated he was representing Stoner. Rosecrans waived a preliminary hearing and was bound over to the district court.

The trial judge who imposed the sentence accorded Rosecrans a full, fair and exhaustive hearing on the issues raised by his § 2255 application, as to whether his statements were made to the F. B. I. agents voluntarily, after he had been fully advised of his Constitutional rights, including the privilege against self-incrimination and his right to counsel, and as to whether his pleas of guilty were competently, understandingly, and voluntarily entered, after the court had made him fully aware of his Constitutional rights, the nature of the offenses with which he was charged, the possible punishment, the right to trial by jury, and to have counsel for his defense.

Rosecrans was present and testified at such hearing; Weatherholt also testified as a witness for Rosecrans; and Cunningham and the three F. B. I. agents testified for the United States.

The records of the hearings at the arraignment and the imposition of sentence were introduced in evidence.

The trial court made exhaustive findings of fact, in which he found the facts above stated, and further found that Rosecrans was fully advised of his right

to counsel and of his privilege not to incriminate himself before Davis and Weatherholt interrogated him on March 3, 1964; that none of the admissions made by Rosecrans to Davis and Weatherholt were communicated to the F. B. I. agents; that Cunningham learned that Rosecrans was in custody in the St. John's County Jail through a confidential source and advised the F. B. I. agents of such custody; that Cunningham did not receive such information from Davis, Weatherholt, or any other state officer; that the F. B. I. agents, before questioning Rosecrans on March 3, and again before questioning him on March 4, fully advised him that they were F. B. I. agents, of the nature of their investigation, of his right not to be interviewed, of his Constitutional privilege against self-incrimination and his right not to make a statement, of his right to counsel before being interrogated and at any interrogation and warned him that any statement he made could be used against him; that he was likewise advised and warned at the beginning of each interview by the agents in the period from March 5 to March 9, 1964, inclusive; that his admissions, oral and written, to the F. B. I. agents were not induced by any threats or promises; that he testified at the first trial of his codefendants that he made the second statement voluntarily, although he had been advised by the attorney acting for Stoner not to give any further statements, and that he further testified at such trial in response to questions by defense counsel that no threats or promises had induced his pleas of guilty and that they were wholly voluntary; that he and his codefendants stole dynamite, discussed and planned its use, and with it "dynamited" the Godfrey home; and that his pleas of guilty were not in anywise induced by any threats or promises.

The court concluded that the statements made by Rosecrans to the F. B. I. agents were wholly voluntary and did not in anywise induce his subsequent pleas of guilty, and that the pleas of guilty were entered competently, understandingly, and voluntarily.

Rosecrans testified at the hearing on the motion that he was led to believe that state charges arising out of the railroad bombing would be dropped if he gave the statements to the F. B. I. Weatherholt testified that Sheriff Davis was trying to get a good "deal" for Rosecrans. Rosecrans did mention the state charges to the F. B. I. agents and Cunningham and inquired what would be the effect on them if he gave the agents a statement; and there can be no doubt, also, that Rosecrans did discuss that matter with Davis and Weatherholt, and that Davis was trying to help Rosecrans. However, Cunningham and all three agents testified unequivocally that they told Rosecrans they could not cause the state charges not to be pressed, and they would not in anywise endeavor so to do. The only thing that was said was Cunningham's statement, in response to a question from Rosecrans, that he would advise the Sheriff of Duval County that Rosecrans had cooperated, if he gave a statement.

The record of the arraignment demonstrates that the inquiries addressed to Rosecrans by the court with respect to his understanding of his Constitutional rights, the nature of the charges, the penalties that might be imposed, and his right to the appointment of counsel for his defense were in nowise perfunctory. They clearly show from the comprehensive and penetrating inquiries made to Rosecrans by the sentencing court and by Rosecrans' answers thereto that he fully understood his Constitutional rights, the nature of the charges, and the penalties that could be imposed therefor, and that when he entered his pleas of guilty he acted competently, understandingly, and voluntarily, and with a full understanding of his rights and the consequences of such pleas.

A motion under § 2255, supra, is an independent civil proceeding, and it is not a part of the proceedings in the

criminal case in which the sentence attacked was imposed.[4]

■ We think no useful purpose could be served by narrating the evidence in detail. A careful examination of the record leads us to the conclusion that the findings of the trial court not only are not "clearly erroneous,"[5] but that the evidence adduced at the hearing on the motion clearly affords firm and substantial support for such findings.

The findings made by the trial judge at the hearing on the motion fully support his legal conclusions. Hence, we hold that the oral and written statements made by Rosecrans to the F. B. I. agents were wholly voluntary, and that his pleas of guilty were not tainted by such statements and were not in anywise induced by the fact that he had made such statements.

■ While a form of attack on a sentence under § 2255, supra, is direct, the grounds therefor are limited to matters that may be raised on collateral attack.[6]

■ Where there is an offense defined by a federal statute of which the court has jurisdiction and there is an endeavor to charge such offense by the indictment or information and the court acquires jurisdiction over the person of the defendant, the sufficiency of the indictment or information is not subject to collateral attack by habeas corpus or motion under § 2255, supra.[7]

■ However, if the indictment or information attempts to charge a nonexistent federal offense, or as it is sometimes called, an impossible offense, as where it appears the offense sought to be charged, even if defined by state law or known to the common law, is not defined by federal statute, it affirmatively appears that no federal offense was committed, the indictment is subject to collateral attack.[8]

■ Here, under the tests stated above, it clearly appears that neither

---

4. United States v. Kelly, 10 Cir., 269 F.2d 448, 451;
   Heflin v. United States, 358 U.S. 415, 418, 79 S.Ct. 451, 3 L.Ed.2d 407;
   Riddle v. Dyche, 262 U.S. 333, 336, 43 S.Ct. 555, 67 L.Ed. 1009;
   United States v. Williamson, 5 Cir., 255 F.2d 512, 515;
   Estep v. United States, 5 Cir., 251 F.2d 579, 581.

5. See following cases, where the "clearly erroneous test" was applied on appellate court review of findings in § 2255, supra, and habeas corpus proceedings:
   United States v. DiPalermo, 2 Cir., 228 F.2d 901, 902;
   King v. Heard, 5 Cir., 310 F.2d 127;
   United States ex rel. Goins v. Walker, 5 Cir., 340 F.2d 6, 9;
   Wade v. Mayo, 334 U.S. 672, 683, 684, 68 S.Ct. 1270, 92 L.Ed. 1647.

6. Barnes v. Hunter, 10 Cir., 188 F.2d 86, 88;
   Huizar v. United States, 5 Cir., 339 F.2d 173, 174;
   Foster v. United States, 10 Cir., 339 F.2d 188, 190.

7. Aderhold v. Hugart, 5 Cir., 67 F.2d 247, 248;
   Knight v. Hudspeth, 10 Cir., 112 F.2d 137, 139;
   Barnes v. Hunter, 10 Cir., 188 F.2d 86;

Marteny v. United States, 10 Cir., 216 F.2d 760, 762;
   Smith v. United States, 10 Cir., 205 F.2d 768, 770;
   Huizar v. United States, 5 Cir., 339 F.2d 173, 174, 175;
   Knewel v. Egan, 268 U.S. 442, 446, 45 S.Ct. 522, 69 L.Ed. 1036;
   Goto v. Lane, 265 U.S. 393, 401, 44 S.Ct. 525, 68 L.Ed. 1070.
   In Goto v. Lane, supra, at page 402, 44 S.Ct. at 527 the court said:
   " * * * The circuit court in which the petitioners were tried and convicted undoubtedly had jurisdiction of the subject matter and of their persons, and the sentence imposed was not in excess of its power. The offense charged was neither colorless nor an impossible one under the law. The construction to be put on the indictment, its sufficiency * * * were all matters the determination of which rested primarily with that court. If it erred in determining them, its judgment was not for that reason void, * * *."

8. Barnes v. Hunter, 10 Cir., 188 F.2d 86, 89;
   Kloian v. United States, 5 Cir., 349 F.2d 291, 292;
   Kreuter v. United States, 10 Cir., 201 F.2d 33, 35;
   Huizar v. United States, 5 Cir., 339 F.2d 173, 174.

count of the indictment was vulnerable to collateral attack under § 2255, supra.

In Busby v. Holman, 5 Cir., 356 F.2d 75, 77, the court said that a plea of guilty "if voluntarily and understandingly made, is conclusive as to the defendant's guilt, admitting all the facts charged and waiving all non-jurisdictional defects in the prior proceedings against him."

■ A plea of guilty is not a mere admission or extrajudicial confession of guilt, but it is a conviction, and is as conclusive as the verdict of a jury.[9]

■ The subsequent acquittal of Rosecrans' five codefendants does not constitute a refutation of Rosecrans' guilt, which he solemnly admitted by his plea of guilty. Such acquittal may have been the result of the failure of the United States to produce evidence at the trials satisfying the jury of the codefendants' guilt beyond a reasonable doubt, or because of other reasons.[10]

Moreover, Count One of the indictment (the conspiracy count) charged that Rosecrans conspired not only with his five codefendants, but with divers other persons to the grand jury unknown, and the written statements made by Rosecrans to the F. B. I. agents and evidence adduced at the trial showed persons other than Rosecrans and his five codefendants were parties to the conspiracy.

We conclude that the conviction of Rosecrans on his pleas of guilty was not affected by the later acquittal of his codefendants.[11]

We have considered other contentions made by counsel for Rosecrans in support of his claim that the sentence should be vacated and find them wholly lacking in merit.

The order is affirmed.

**9.** United States v. Swaggerty, 7 Cir., 218 F.2d 875, 880; Friedman v. United States, 8 Cir., 200 F.2d 690, 696; Hoyt v. United States, 10 Cir., 252 F.2d 460.

**10.** Platt v. State, 143 Neb. 131, 8 N.W.2d 849, 855;

See also, State v. Oats, 32 N.J.Super. 435, 108 A.2d 641, 645.

**11.** See Rex v. Scott, 3 Bur. (Eng.) 1262; Rex v. Kinnersley, 1 Str. (Eng.) 193; Rex v. Niccolls, 2 Str. (Eng.) 1227.