**Fred Loyd HAYES and Kenneth Ray McMaster, Plaintiffs-Appellants,**

**v.**

**UNITED STATES of America, Defendant-Appellee.**

**No. 71-3298.**

United States Court of Appeals, Fifth Circuit.

June 30, 1972.

Rehearing and Rehearing En Banc Aug. 3, 1972.

George Washington, Jr., Washington & Washington, Tulsa, Okl., for plaintiffs-appellants.

Roby Hadden, U. S. Atty., Dale Long, Asst. U. S. Atty., Tyler, Tex., Monica Gallagher, Civil Rights Div., U. S. Dept. of Justice, Washington, D. C., David L.

Norman, Asst. Atty. Gen., John C. Hoyle, Atty., U. S. Dept. of Justice, Civil Rights Div., Washington, D. C., for defendant-appellee.

Before GOLDBERG, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

We review on appeal the denial by the district court of post-conviction relief sought under Title 28, U.S.C., Section 2255.

On July 23, 1970, the grand jury for the Eastern District of Texas returned a two-count indictment against Fred Loyd Hayes and Kenneth Ray McMaster (appellants). Count 1 alleged a violation of Title 18, U.S.C., Section 241,[1] and Count 2 charged a violation of Title 18, U.S.C. Section 1509.[2] The appellants were found guilty as charged by a trial jury and were then each sentenced to consecutive prison terms of ten years under Count 1 and one year under Count 2 of the indictment. Each was fined $10,000 under Count 1 and $1,000 under Count 2. We affirmed on direct appeal. United States v. Hayes and McMaster, 5 Cir. 1971, 444 F.2d 472, cert. denied, 1971, 404 U.S. 882, 92 S.Ct. 210, 30 L.Ed.2d 163.

The appellants, now serving their confinement sentences, have moved to vacate those sentences pursuant to Title 28, U.S.C., Section 2255.[3] The dis-

---

1. Title 18, U.S.C., § 241, provides:

"If two or more persons conspire to injure, oppress, threaten, or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same; or

"If two or more persons go in disguise on the highway, or on the premises of another, with intent to prevent or hinder his free exercise or enjoyment of any right or privilege so secured—

"They shall be fined not more than $10,000 or imprisoned not more than ten years, or both; and if death results, they shall be subject to imprisonment for any term of years or for life."

2. Title 18, U.S.C. § 1509 provides:

"Whoever, by threats or force, willfully prevents, obstructs, impedes, or interferes with, or willfully attempts to prevent, obstruct, impede, or interfere with, the due exercise of rights or the performance of duties under any order, judgment, or decree of a court of the United States, shall be fined not more than $1,000 or imprisoned not more than one year, or both."

3. Title 28, U.S.C., § 2255, provides in pertinent part:

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right ·to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that

trict court denied relief and timely appeals were taken. For reasons which differ from those given by the district court, we affirm.

Judge Ainsworth's opinion for this Court on the direct appeal sufficiently sets forth the underlying facts:

"Appellants were part of a group of white residents of Longview, Texas, who allegedly feared a 'revolution' of black members of the community, and were concerned with events in connection with public school integration. The group met frequently to discuss and prepare for their defense against the purported forthcoming Negro uprising. Lethal weapons, such as cannon, mortar, hand grenades, Molotov Cocktails, gun powder, and dynamite, were secured by the group for future use. The ammunition was secreted in large quantities in appellant Hayes' garage and at an outlying farm area. Several experiments were conducted by members of the group in the use of the explosives.

"At the trial evidence was adduced through fellow members of the Longview group and other Longview residents about appellants' participation in the conspiracy to prepare for the counterattack. It was shown that defendant Hayes, on June 25, 1970, dynamited a house purchased by a Negro woman in a white neighborhood. There was also testimony that defendant Hayes and one of the coconspirators constructed 'booby traps' by placing dynamite in flashlight cases, wiring an electric cap to a battery which was then connected to the flashlight switch. The device was designed to explode when the switch was turned on. Hayes, McMaster and two coconspirators then took the devices and

drove to a Negro residential neighborhood in Nacogdoches, Texas, where Hayes and one of the other men placed two of the 'booby traps'. The evidence also showed that following the issuance of a federal court order by Judge Fisher on June 17, 1970, approving the busing of Negro students to all-white schools, appellants and other members of the group formulated a plan to impede the transportation of the students to the Longview schools by dynamiting the buses. The plan was carried out and on July 4, 1970, under cover of darkness, charges of dynamite were set beneath the buses and exploded, causing serious damage to the vehicles and the parking area." 444 F.2d at 473–474.

Count 1 of the indictment charged:

"Commencing on or about December 1, 1969, and continuing to on or about July 4, 1970, in the City of Longview, County of Gregg, State and Eastern District of Texas, FRED LOYD HAYES and KENNETH RAY McMASTER, defendants herein, did conspire together, with each other and with Robert Isaac Sparks, Jr., Howard Hiram Smith, Clarita Marie Hayes and Glenn Donald Parker, not named as defendants herein, and with other persons to the grand jury unknown, to injure, oppress, threaten and intimidate Negro students of the Longview Independent School District, who are citizens of the United States, in the free exercise and enjoyment of the right and privilege secured to them by the Constitution and laws of the United States, to wit: the right and privilege to attend school without regard to race or color.

"It was part of the plan and purpose of the conspiracy that the defendants on July 4, 1970, would en-

---

the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A motion for such relief may be made at any time.

\*   \*   \*   \*   \*

"The sentencing court shall not be required to entertain a second or successive motion for similar relief on behalf of the same prisoner."

ter the Longview Independent School District school bus parking lot and maintenance area and set explosive charges designed to damage the school buses parked there, and thereby prevent the transportation of Negro students to school without regard to race or color, as ordered by the United States District Court for the Eastern District of Texas.

"In violation of Title 18, United States Code, Section 241."

Count 2 charged that:

"On or about July 4, 1970, in the City of Longview, County of Gregg, State and Eastern District of Texas, FRED LOYD HAYES and KENNETH RAY McMASTER did wilfully attempt by force to prevent, obstruct, impede and interfere with the performance of the Longview Independent School District in the exercise of its duties under an Order of the United States District Court for the Eastern District of Texas, by entering the Longview Independent School District school bus parking lot and maintenance area and setting explosive charges designed to damage the school buses parked there and thereby prevent the transportation of Negro students to school without regard to race or color.

"In violation of Title 18, United States Code, Section 1509."

## THE PRE-TRIAL MOTIONS TO DISMISS

The appellants moved to dismiss the indictment on September 18, 1970. With respect to Count 1, they contended: (1) the count failed to state an offense against the United States because it failed to specify if the Negro students were in the process of attending "public" or "private" schools; (2) the count was

defective because it failed to allege a specific intent on the parts of the appellants to deprive the Negro students of a constitutionally protected right; (3) the count was deficient because it failed to allege that the prevention of the transportation of Negro students to school without regard to race or color deprived or was calculated to deprive the black children of a constitutionally protected right, and (4) the two paragraphs of the count alleged separate and distinct conspiracies. As to Count 2, the grounds for dismissal asserted were: (1) it failed to state an offense against the United States because it failed to allege or identify the particular court order involved; (2) it was defective because it failed to allege that the order was a valid, final order of the court or that the same was in effect on the date of the alleged offense; (3) it was defective because it failed to set forth the language of the court order; and (4) it was defective because it failed to allege the specific duties, if any, imposed on the Longview Independent School District by the court order.

A supplemental motion to dismiss was submitted on October 5, 1970, contending that Judge Fisher's school desegregation order was invalid as contravening the proviso to Title 42, U.S. C., Section 2000c–6.[4] Both motions were denied October 13, 1970, immediately prior to the commencement of the trial.

## THE DIRECT APPEAL

Following their judgments of conviction and the imposition of their sentences, the appellants took a timely joint appeal to this Court urging three grounds for reversal: (1) The prosecutor had prejudiced their substantial rights when he remarked to the jury that a child had asked him, "Why did

---

4. " . . . . provided that nothing herein shall empower any official or court of the United States to issue any order seeking to achieve a racial balance in any school by requiring the transportation of pupils or students from one school to another or one school district to another in order to achieve such racial balance, or otherwise enlarge the existing power of the court to insure compliance with constitutional standards."

those men bomb those buses?"; (2) The prosecutor's final argument to the jury included the improper assertion that, "There is no doubt in anybody's mind in this courtroom that they are guilty"; and (3) privately retained trial defense counsel was ineffective and incompetent. We rejected each of those contentions and affirmed the judgments of conviction. On direct appeal the appellant did not argue that the indictment failed to state offenses against the United States or that the trial judge had erroneously denied their motions to dismiss.

## THE 2255 MOTION

The Supreme Court's decision in United States v. Guest, 1966, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239, was the primary basis for the motion to vacate the sentences imposed under Count 1 of the indictment. It was urged that Count 1 failed to state an offense under Title 18, U.S.C., Section 241, because it did not include an allegation of "state action". In addition, appellants asserted that no evidence of "state action" was presented at the trial which could conceivably have remedied the defect in the indictment. The motion once again raised the issue of incompetency of trial defense counsel. Finally, the appellant argued that they had been cleared of the Nacogdoches bombing upon which the prosecution had relied to show intent.

The United States took three positions in responding below to the motion. First, the appellee maintained that the failure of the appellants to pursue the alleged insufficiency of the indictment on direct appeal (having raised that issue in the trial court) constituted a permanent waiver of the right to mount a collateral attack against the indictment by post-conviction proceedings.

Second, the United States asserted that a motion under Section 2255 is not an appropriate vehicle for an attack upon the sufficiency of the indictment. Finally, the United States contended that regardless of the inapplicability of the Equal Protection Clause of the Fourteenth Amendment, it was not necessary to allege and prove "state action" in this case because the Negro students who were in the process of being transported to a previously all-white public school enjoyed the right to attend school without regard to race or color under the Thirteenth Amendment to the United States Constitution.

## THE DECISION OF THE DISTRICT COURT

The district court ruled that, because the appellants had raised the issue of the alleged insufficiency of the indictment by means of pre-trial motions to dismiss, this motion to vacate sentence constituted "a second or successive motion for similar relief" which the district court was not required to entertain. Next, the district court held that the sufficiency of the indictment on which the defendants had been convicted was not subject to challenge in a collateral attack under Title 28, U.S.C. Section 2255. According to the district court, such a challenge could have been made only on direct appeal of the conviction.

Even though asserting these two grounds for holding that the motion to vacate sentence failed for procedural reasons, the district court considered the merits of the motion and thereupon held that the black students being bused enjoyed Thirteenth Amendment rights to attend public school without regard to race or color, thereby eliminating the requirement for a showing of "state action".[5] For this proposition, the dis-

---

5. On the direct appeal, the appellants claimed that their trial defense counsel were ineffective and incompetent because they had decided not to have the appellants testify at trial, had failed to prepare adequately for trial, had briefed no law, had not brought to light readily available evidence which would impeach government witnesses, and had failed to call available character witnesses for the appellants. In this post-conviction proceeding, they have advanced a new

trict court relied upon Griffin v. Breckenridge, 1971, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338.

## THE APPELLATE CONTENTIONS OF THE PARTIES

The appellants urge reversal of the district court's denial of relief on the following grounds: (1) the appellants should not be barred from raising the "state action" challenge to the sufficiency of Count 1 in this proceeding under Title 28, U.S.C., Section 2255, because that issue was not litigated in the original prosecution and the subsequent appeal; (2) Count 1 failed to state an offense against the United States in that it did not allege "state action"; and (3) a new trial as to the offense alleged under Count 2 should be ordered in light of the asserted invalidity of Count 1 and the proven inadequacy of counsel at trial.

The United States, urging affirmance, argues: (1) the district court did not err in holding that the appellants may not properly relitigate by motion under Section 2255 the sufficiency of the underlying indictment in stating an offense or of the evidence offered at trial to sustain the conviction; and (2) the district court did not err in ruling that Count 1 of the indictment stated an offense under Title 18, U.S.C., Section 241, with respect to the deprivation of rights guaranteed by the Thirteenth Amendment.

## DISCUSSION

Under the facts of this case, we believe that the district court incorrectly held that the remedy provided by Title 28, U.S.C., Section 2255, was not available to the appellants for a challenge to the sufficiency of Count 1 of the indictment.

theory of trial defense counsel incompetence: that counsel allegedly failed to investigate and offer certain evidence which would have greatly aided their defense. The district court disposed of this contention in the following manner:

"(11) The testimony of the petitioners' witness, Floyd Thurman, was the only evidence presented on the second point raised in petitioners' motion. His testimony is not credible. Thurman, an elderly man from Smith County, Texas, testified that he overheard a conversation on the last Sunday in October, 1970, in a lounge in Richmond, Texas, near Houston, approximately 200 miles from the Longview-Tyler area. This purported conversation was between three persons whom Thurman had never seen before and has never seen since. The substance of the alleged conversation was that persons other than petitioners committed the violations charged in count one. Although he was a mere eavesdropper, Thurman was able to give a detailed account as to their background and activities since World War II. His description of the alleged conversation left the court with the conviction that it was the result of an overactive imagination. Moreover, the witness Thurman insisted that he reported this conversation to the petitioners' attorney *prior* to trial. The alleged conversation was

overheard on October 25, 1970; the witness supposedly reported the conversation on October 27, 1970. The docket sheet in Criminal Action No. 7110 shows petitioners' trial commenced on October 13, 1970, and concluded October 20, 1970."

Regarding the appellants' claim that they had been cleared of the Nacogdoches bombing incident, the district court found:

"(12) Petitioners Fred Loyd Hayes and Kenneth Ray McMaster were indicted in Nacogdoches County, Texas, in Cause No. 8995 and charged with the offense of possession of a bomb, in violation of Vernon's Ann.P.C., Art. 1723. During the trial, an expert witness called by the State claimed a privilege in refusing to divulge information as to how he disarmed the bomb in question. The State District Attorney, rather than have the witness violate his privileged information or be held in contempt of court, moved to dismiss the indictment against the petitioners. The Honorable Jack Pierce, Judge of the District Court of Nacogdoches County, 145th Judicial District of Texas, on motion of the State, dismissed the criminal action without deciding the merits of the case. Petitioners were thus not 'cleared' of such criminal offense."

Neither of the two pre-trial motions to dismiss the indictment raised the issue as to lack of "state action". We hold therefore that this motion to vacate sentence is not "a second or successive motion for similar relief on behalf of the same prisoner".

■ As to the second aspect of the United States' procedural defense, we believe that the motion to vacate sentence is not a mere challenge to the sufficiency of Count 1, but constitutes a claim that the sentencing "court was without jurisdiction to impose such sentence", a ground expressly made the basis for collateral attack by Section 2255. United States v. Guest, supra, was a prosecution under Title 18, U.S.C., Section 241, in which it was alleged that the defendants had entered into a private conspiracy to deprive blacks of federally protected rights. Among such rights was the "right to the equal utilization, without discrimination upon the basis of race, of public facilities in the vicinity of Athens, Georgia, owned, operated or managed by or on behalf of the State of Georgia or any subdivision thereof". One of the means alleged for the accomplishment of the conspiracy's objectives was "causing the arrest of Negroes by means of false reports that such Negroes had committed criminal acts". The district court dismissed the indictment, M.D.Georgia, 1964, 246 F. Supp. 475, and the United States appealed. In an opinion authored by Mr. Justice Stewart, the Supreme Court reversed. The Supreme Court expressly disclaimed any intention to deal with Congress' power under Section 5 of the Fourteenth Amendment.[6] 383 U.S. at 755, 86 S.Ct. at 1176, 16 L.Ed.2d at 247. Instead, the Court held that the possible involvement of state or local law enforcement officials in the alleged conspiracy was enough to sustain the validity of the indictment under an Equal Protection Clause theory. In so ruling, the Court observed:

"It is a commonplace that rights under the Equal Protection Clause itself arise only where there has been involvement of the State or of one acting under the color of its authority." 383 U.S. at 755, 86 S.Ct. at 1176, 16 L.Ed.2d at 247.

The appellants contend that the right of black students to attend public schools without regard to race or color subsists only under the Equal Protection Clause of the Fourteenth Amendment. The argument follows that in the absence of "state action" in a conspiracy to deprive black students of that right, no violation of the Fourteenth Amendment's Equal Protection Clause is possible and a prosecution brought under Title 18, U.S.C., Section 241, is not appropriate. Clearly, such an argument constitutes a jurisdictional challenge to the sentences imposed in this case. If the argument is sound, Section 2255 is an appropriate means of raising it.

This Court's decision in Rosecrans v. United States, 5 Cir. 1967, 378 F.2d 561, supports our determination that the appellants' motion to vacate sentence constitutes a jurisdictional challenge explicitly sanctioned by Section 2255. *Rosecrans* was a Section 2255 proceeding attacking a conviction under Title 18, Section 241, for conspiracy to interfere with constitutional rights and for interference with the exercise of rights under a court order in violation of Title 18, Section 1509. In affirming the district court's denial of relief we held that

---

6. Amendment XIV, U. S. Constitution:
"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

\* \* \* \* \*

"Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."

the subsequent acquittal of the defendant's codefendants did not affect the defendant's conviction on guilty pleas, particularly since the conspiracy count alleged that the conspiracy included persons unknown and there was evidence of the involvement of others. Judge Phillips'[7] opinion for this Court proceeded with these enlightening observations:

"While a form of attack on a sentence under § 2255, supra, is direct, the grounds therefor are limited to matters that may be raised on collateral attack.

"Where there is an offense defined by a federal statute of which the court has jurisdiction and there is an endeavor to charge such offense by the indictment or information and the court acquires jurisdiction over the person of the defendant, the sufficiency of the indictment or information is not subject to collateral attack by habeas corpus or motion under § 2255, supra.

"However, if the indictment or information attempts to charge a nonexistent federal offense, or as it is sometimes called, an impossible offense, as where it appears the offense sought to be charged, even if defined by state law or known to the common law, is not defined by federal statute, it affirmatively appears that no federal offense was committed, the indictment is subject to collateral attack." 378 F.2d at 566.

A similar statement of the law appeared in our decision in Bankston v. United States, 5 Cir. 1970, 433 F.2d 1294, an appeal from an unsuccessful Section 2255 proceeding in which Bankston sought to set aside a conviction for armed bank robbery on the ground that the indictment failed to list the names of the individuals allegedly placed in jeopardy during the robbery. We held that the indictment was sufficient when it merely stated that the persons put in jeopardy were bank employees, noting:

"The applicable law is stated in 4 Barron and Holtzoff, Federal Practice and Procedure, § 1913, as follows: 'If the sufficiency of an indictment is not questioned at the trial, the indictment must be held sufficient unless it is so defective that it does not, by any reasonable construction, charge an offense for which the defendant is convicted'." 433 F.2d at 1295.

In view of the foregoing discussion we hold that the 2255 motion to vacate sentence stated an appropriate challenge to the jurisdiction of the sentencing court.

We thus reach the fundamental question sought to be raised on this appeal: Does the right of black children to attend public schools without regard to race or color subsist solely under the Equal Protection Clause of the Fourteenth Amendment? If the answer is in the affirmative, the district court should have granted relief. The absence of "state action" in the conspiracy charged under Count 1 rendered that Count fatally deficient under the teachings of *Guest*, supra.

The appellants point out that all the major court decisions dealing with racial segregation in this nation's public schools, starting with Brown v. Board of Education, 1954, 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873, have addressed that social problem in terms of violations of the Fourteenth Amendment's Equal Protection Clause. But, as already noted, the United States takes the position that the Thirteenth Amendment[8] also guarantees the right of black students to attend public schools without regard to race or color and that under the decision

---

7. Honorable Orie L. Phillips of the 10th Circuit, sitting by designation.

8. Amendment XIII, U. S. Constitution:
"Section 1. Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.
"Section 2. Congress shall have power to enforce this article by appropriate legislation".

in Griffin v. Breckenridge, 1971, 403 U. S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338, no showing of "state action" is necessary to establish a violation of Title 18, U.S.C., Section 241.

Griffin v. Breckenridge was a private civil action to recover damages on account of an allegedly racially motivated assault committed upon a public highway. The plaintiffs asserted that a federal cause of action was provided under Title 42, U.S.C., Section 1985(3).[9] The Court held that Section 1985(3), also known as the Ku Klux Klan Act, extended to private conspiracies and was constitutional as applied under the Thirteenth Amendment and under the congressional power to protect the right of interstate travel. The Court noted:

> "That § 1985(3) reaches private conspiracies to deprive others of legal rights can, of itself, cause no doubts of its constitutionality. It has long been settled that 18 U.S.C. § 241, a criminal statute of far broader phrasing . . . reaches wholly private conspiracies and is constitutional." 403 U.S. at 104, 91 S.Ct. at 1799, 29 L.Ed.2d at 349.

The government's theory is appealing and persuasive. But absent any prior authoritative decision holding that the Thirteenth Amendment to the United States Constitution secures the right of black students to attend public schools without regard to race or color, we rest our affirmance upon a different basis. We hold that the right of black students to attend public schools without regard to race or color is clearly secured by Title IV of the Civil Rights Act of 1964.[10]

Title IV of the 1964 Civil Rights Act is codified as Subchapter IV, Chapter 21, Title 42, U.S.Code. Section 2000c(b) defines "desegregation":

> ". . . . the assignment of students to public schools and within such schools without regard to their race, color, religion, or national origin, but 'desegregation' shall not mean the assignment of students to public schools in order to overcome racial imbalance."

Section 2000c–2 provides for exerting the weight of the executive branch of the federal government behind the effort to eliminate racial segregation in this nation's public schools:

> "The Commissioner (of Education) is authorized, upon the application of any school board, State, municipality, school district, or other governmental unit legally responsible for operating a public school or schools, to render technical assistance to such applicant in the preparation, adoption, and im-

9. Title 42, U.S.C., Section 1985(3), provides:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

10. Title IV, P.L. 88–352, 78 Stat. 241, 246 (July 2, 1964).

plementation of plans for the desegregation of public schools. Such technical assistance may, among other activities, include making available to such agencies information regarding effective methods of coping with special educational problems occasioned by desegregation, and making available to such agencies personnel of the Office of Education or other persons specially equipped to advise and assist them in coping with such problems."

Sections 2000c–3 and 2000c–4 empower the Commissioner of Education to arrange for special training of teachers and administrators in the problems and techniques of school desegregation and to make grants to cover the costs of giving inservice training to school personnel and employing specialists pertaining to problems incident to desegregation. The Attorney General of the United States is authorized by Section 2000c–6 to institute school desegregation suits in federal courts where private parties "are unable, in his judgment, to initiate and maintain appropriate legal proceedings for relief".

House Report Number 914, November 20, 1963, accompanied H.R. 7152, the version which eventually became the Civil Rights Act of 1964. That Report discussed the general purposes of Title IV in the following manner:

"General. Title IV, which is concerned with the desegregation of schools, has two main purposes. First, it would authorize the Commissioner of Education to provide, upon application by local school authorities, technical assistance and financial aid to assist in dealing with problems incident to desegregation. Second, it would authorize the Attorney General to institute suits seeking desegregation of public schools where the students or parents involved are unable to bring suit and where he considers that a suit would materially further *the public policy favoring the orderly achievement of desegregation in pub-*

*lic education."* (Emphasis supplied) 1964 U.S.Code Congressional & Administrative News pp. 2391, 2398.

This review of Title IV, Civil Rights Act of 1964, demonstrates that it established by federal law the right of black students to attend public schools without regard to race or color. Enactment of Title IV was a legitimate exercise of Section 5 of the Fourteenth Amendment to the Constitution's grant of Congressional power.

As noted earlier in this opinion, Title 18, U.S.C., Section 241 proscribes conspiracies designed to obstruct the exercise of rights or privileges secured by the Constitution *or laws* of the United States. Because the right of black students to attend public schools without regard to race or color is secured by federal statute, Count 1 of the indictment stated an offense against the United States.

█ There remain for consideration the attacks upon the factual findings of the district court pertaining to the alleged incompetency of trial defense counsel and the meaning of the dismissal in the state court prosecution for the Nacogdoches bombing. We give these contentions short shrift. Suffice to say that the trial court's findings are not shown to be clearly erroneous. They will not be disturbed on this appeal. Rule 52(a), F.R.Civ.P., Martin v. United States, 5 Cir. 1968, 399 F.2d 708.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.