EARL T. PLATT V. STATE OF NEBRASKA.

8 N. W. (2d) 849

FILED APRIL 2, 1943. No. 31534.

*Perry, Van Pelt & Marti, Arthur E. Perry* and *J. P. O'Gara,* for plaintiff in error.

*Walter R. Johnson, Attorney General,* and *Rush C. Clarke, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

CARTER, J.

This is a criminal proceeding in which the defendant Earl T. Platt and another were prosecuted for defrauding the state of Nebraska under the provisions of section 28-301, Comp. St. 1929. Defendant Platt, who will hereafter be referred to as the defendant, was tried separately. The jury returned a verdict of guilty and the court imposed a sentence of one year in the penitentiary. The defendant brings error to secure a review of the case in this court.

The information alleged in substance that on or about September 1, 1938, and continuously thereafter until April 1, 1941, the defendant and one Natalie Stromberger unlawfully conspired to defraud the state of Nebraska, with the intent to so defraud, by aiding and directing certain employees of the University of Nebraska to make claim for and receive from the state large sums of money upon the false pretense that said employees had perfomed services for the state for which said money was owing. It is further alleged that defendant and Natalie Stromberger conspired with each other and with other persons in so defrauding the state. The information contains allegations of five separate and distinct overt acts with as many or more different persons all tending to establish the charge. The facts will be set forth more particularly in the discussion as to the sufficiency of the evidence to sustain the conviction.

The record discloses that the defendant was the assistant director of University Extension in charge of supervised correspondence study with a number of part-time employees under his supervision and direction, and in addition thereto a full-time stenographer and secretary, Natalie Stromberger. The record shows that all university operations were conducted under an annual budget prepared by the Board of Regents. All claims for salaries were required to be approved by the person having immediate charge of the employees and by the head of the department. It was therefore the duty of the defendant to approve all salary claims in his department and refer them to the head

of the University Extension Division for approval before they were sent to the chancellor and finance secretary for final consideration. It is quite evident from the record that all the officers superior to the defendant were required by necessity to rely upon the approval of defendant as to the detail of each claim made by employees under his supervision.

The evidence further shows that defendant had a number of students working in his department and under his immediate direction on a part-time basis. In order to compute their earnings they were required to register on time cards the actual hours they worked, a time clock being provided by which the number of hours of employment could be correctly recorded and ascertained. During the time mentioned in the information, the defendant informed five student employees that they were to manipulate the time clock and time cards in such a manner as to indicate that they had performed more hours of service than they had actually performed. The students were then advised by defendant that each should pay back to him or to Natalie Stromberger the amount of money in excess of that which they had actually earned. In this manner defendant and Natalie Stromberger, according to defendant's own statement, collected $411.74 from the five students. The claims in each case were falsely verified and approved by the defendant and subsequently approved by the head of the department, the chancellor and the finance secretary, without knowledge of their falsity. In this manner the state auditor and state treasurer were caused to issue warrants on the state treasury in payment of the fraudulent claims. There is evidence in the record that a large part of this money was used for the payment of an unauthorized salary increase to Natalie Stromberger, the defendant admitting that approximately $425 was paid to her for this purpose.

The evidence further shows that four other employees were induced and directed by the defendant to falsely make out time cards in the names of their wives, when in truth and in fact the wives were not at the time in the employ of

the university. The money thus obtained was delivered to defendant, or Natalie Stromberger, or in some instances retained by the employee husbands of the false claimants as payments on amounts which defendant had promised the department would pay them. In one instance an employee made a trip to California to address an educational meeting only after defendant had promised that his department would bear the expenses of the trip. No money being available for that purpose, defendant suggested the filing of fraudulent time cards by the employee's wife until the sum of $150, the cost of the trip, had been paid back to him. The plan was carried out. There is evidence in the record that funds thus collected from other employees, were used to purchase an addressograph, a radio clock, venetian blinds, an air conditioning machine, an interoffice communication system and a number of small items of which no record was made, all of which totaled approximately $292.11 according to defendant's own statement, and none of which purchases was authorized to be paid for from the funds of the state. Defendant testifies that he never received any part of these funds and there is no direct proof that he ever did, although a portion of the moneys collected is not accounted for.

A recitation of the facts in detail can serve no useful purpose. That defendant and Natalie Stromberger conspired with each other and with third persons to defraud the state and to use the money thus obtained for purposes not authorized is clearly established. We therefore conclude that the evidence was amply sufficient to sustain the verdict, unless there was error in the record sufficient to vitiate the verdict and judgment.

Defendant urges that there is no evidence in the record sufficient to sustain a finding that a conspiracy existed within the meaning of the statute. The essence of a criminal conspiracy is an unlawful agreement to violate a criminal statute. It is not necessary that direct evidence of a positive agreement to jointly participate in the violation of a criminal statute be produced in order to establish the

crime. A criminal conspiracy must necessarily be entered into with the intent to defraud the state or to violate a criminal law and, intent being a matter of the mind, it is rarely possible to prove that element of the crime except by circumstances. In the case before us the defendant and Natalie Stromberger participated in the falsifying of time cards and pay roll vouchers and caused the amount gained by padding the pay roll to be returned to them. The overt acts were established not only by the employees involved, but by the evidence of the defendant himself. The evidence is clearly sufficient to sustain the jury's verdict that defendant, Natalie Stromberger and others, conspired to defraud the state. The statute contains the provision "and one or more of such parties do any act to effect the object of the conspiracy." This requires the allegation of an overt act in the information and proof thereof by evidence beyond a reasonable doubt. We think that an overt act done in furtherance of the conspiracy was alleged and amply proved. The overt acts established by the evidence are proper to be considered by the jury in connection with all the other evidence in determining whether a conspiracy existed, and where, as in this case, the overt acts tend to establish a scheme or plan to accomplish some unlawful object, they may be properly shown as evidence of a preexisting conspiracy. We are of the opinion that the evidence of all the overt acts proved, all based on the primary object of obtaining unauthorized funds by falsifying claims against the state, participated in by defendant, Natalie Stromberger and other employees, is sufficient to sustain the jury's finding that defendant, Natalie Stromberger and others, did have an agreement or understanding to secure funds from the state by the fraudulent method shown.

As we have previously mentioned, under our statute an overt act effecting the object of conspiracy is an essential element of the crime. The information must therefore allege one or more overt acts in order to charge the offense. The defendant filed a motion to quash the information as to each and every overt act therein alleged. In view of the

fact that an overt act effecting the object of the conspiracy is a necessary element of the crime, the trial court properly overruled the motion to quash. See Comp. St. 1929, sec. 29-2014; also *State v. Robinson*, 124 Kan. 245, 259 Pac. 691. The action of the trial court in overruling a motion for a bill of particulars was correct, as the information with clarity and detail informed the defendant of the charge against him. The motion to require the state to elect was also correctly overruled. The motion was on the theory that more than one crime was charged. We can only reiterate that in this state the crime consists of one or more overt acts committed pursuant to a conspiracy to defraud the state or to violate a criminal statute. The information was drawn in conformity with this interpretation and consequently it charged but a single crime.

It is urged that a wrongful intent is an essential element of the crime and that the state has failed in its proof on this point. It is true that defendant states he had no intention of violating any law and assumed that his acts were mere irregularities. The defendant is a well educated man, and was holding an important educational position in our state university. We can hardly believe that such a person could engage in the practice of making false time cards and falsely certifying their correctness to his superior under an honest belief that he was doing no wrong prohibited by the laws of this state. And the fact that he encouraged and directed young students of the university, who undoubtedly respected his advice and directions because of his position, to participate in the scheme does not encourage a belief in our minds that defendant's evidence of a want of a corrupt intent was a likely story. The jury were evidently impressed in the same way and we think with ample justification. The record indicates, not that defendant was free from a corrupt intent, but that he claimed to have committed the unlawful acts at the direction of his superior. This the jury did not believe, but they apparently did believe that defendant conspired with an unlawful intent to wrongfully obtain money from the state treasury. Intent being

a frame of mind difficult of discovery by direct evidence, it is usually necessary to determine it by the circumstances and conduct of the person involved rather than by his expressed statements. We think there was ample evidence from which the jury could properly find that a corrupt intent existed.

The defendant complains of certain of the instructions given by the court. The only one which warrants any discussion here is instruction No. 17 which is: "Whether the money described as irregularly obtained from the state through the state treasury belonged to the state or to the university, you may determine from the evidence; but it was at least in the state's possession and in its treasury and was taken and obtained therefrom by the deceptive means employed and passed in part into the hands of the defendant." As to the first part of this instruction, it clearly favors the defendant as the state was entitled to an instruction that as a matter of law the money admittedly obtained belonged to the state. While the latter part of the instruction could have been stated in a much better way and the choice of words used therein is not to be commended, yet when considered with all the instructions and the evidence, it is not prejudicial to the defendant. The defendant in his testimony admitted that the money received was obtained by a scheme to circumvent the approved methods adopted by the state and university officials but treated it as an irregularity required of him by his superiors. The instruction is in line with that part of the defendant's case and we fail to see how it prejudiced his rights. We find no prejudicial error in any of the instructions given.

Defendant complains of the failure of the court to give the instructions by him tendered. An examination of the tendered instructions reveals that although they are generally correct statements of the law, the same points have been adequately covered by the instructions given by the court. We have considered all objections to the instructions given and refused and find that as a whole they fully and fairly submit the law of the case to the jury. No error has been found in not giving instructions offered.

The defendant urges that one person cannot conspire with himself, and where two persons are tried and one is acquitted, the other must also be acquitted. In this respect the record shows that defendant was convicted on April 21, 1942. On June 13, 1942, the jury, impaneled to hear the separate trial of Natalie Stromberger, returned a verdict of not guilty. The defendant thereupon moved for a discharge upon the authority of *Sherman v. State,* 113 Neb. 173, 202 N. W. 413, as follows: "Upon an information charging two defendants with conspiracy to commit a felony, separate trials were granted; the defendant first tried was convicted, and the second one acquitted. *Held* error to sentence the defendant first tried, as he was entitled to be discharged upon acquittal of his alleged coconspirator." The defendant's motion for a discharge and the motion in arrest of judgment subsequently filed were overruled by the trial court. Defendant contends that this was error.

The attorney general forcibly insists that the rule announced in *Sherman v. State, supra,* is erroneous and asks this court to overrule that decision. The authorities cited are such as to warrant a reconsideration of the rule announced in that case.

The *Sherman* case is decided on the authority of *State v. Tom,* 2 Dev. (N. Car.) 569, and *Casper v. State,* 47 Wis. 535, 2 N. W. 1117. An examination of the briefs filed in the *Sherman* case shows that the defendant in error did not contend against or cite any authorities contrary to the rule announced therein. We think this is a further reason why this court should reexamine the reasoning behind the rule, with a view of ascertaining whether the rule announced is a correct statement of the law.

There can be no question that there must be a degree of dependent criminality between coconspirators to violate a criminal statute in order for a conviction to stand. In other words, the guilt of both must concur in order to establish the guilt of either. Undoubtedly, in more ancient times all persons charged with the crime were tried together, a rule which has been superseded by our statute granting sepa-

rate trials on the request of any defendant. In *State v. Tom*, 2 Dev. (N. Car.) 569, relied on in the *Sherman* case, the holding is to the effect that on an indictment for conspiracy against two, the acquittal of one is the acquittal of the other. And it seems to be conceded in that case that if more than two be charged with a conspiracy and all are acquitted except two, the conviction will stand. This is on the theory that the verdicts are consistent because the minimum number required to engage in a conspiracy have been convicted. The closing statement of the opinion is: "The principle to be elicited from the cases, and the preceding course of reasoning satisfy my mind, that with the exception of the intermediate infliction of punishment, between the conviction of one and the subsequent acquittal of another, there is no difference between the case of a trial of all by one jury, and the separate trial of each by different juries. The operation, on one, of the acquittal of the other does not arise from the mode of pronouncing it, but from the fact of the acquittal itself being in due course of law—the guilt of one being dependent upon that of the other." The question of the correctness of this theory will be discussed later in this opinion.

The only other authority cited in the *Sherman* case is *Casper v. State*, 47 Wis. 535, 2 N. W. 1117. The holding in that case is similar to that in *State v. Tom, supra.* It is indicated in the opinion, however, that the announced rule is not based upon the necessity of convicting two of the conspirators charged, but on the inconsistency of the verdicts rendered as is evidenced by the following language from the opinion: "Several of the English cases cited *supra* hold that where one only is found guilty of conspiracy, his codefendants not being tried, judgment should go against him. When a prisoner is alone indicted for a conspiracy with others unknown, or when he is indicted with others who cannot be taken or brought to trial, there appears to be no valid objection to that practice; for the verdict against him is that he was guilty with others who cannot be brought to trial, and there is no presumption in his favor of their in-

nocence. But where several are prosecuted together, taken, and may be brought to trial, for conspiracy, and, their trial being severed, one only has been tried and found guilty, there is manifest impropriety in proceeding to judgment against him before the trial of his codefendants. The verdict against him would raise no presumption against them, and their acquittal would be inconsistent with his conviction, and should operate in law to acquit him also. Judgment against him, in such case, would not only be a cruel injustice, but an absurdity, which the law ought not to sanction; for one only cannot be guilty of conspiracy, and judgment against one, upon acquittal of those charged with him, would be not only a wrong to the person, but a blunder in law."

What then is the true rule? In answering this question it is necessary to examine into the origin of the rule, its historical development and the reasoning and logic upon which the rule must rest.

It is the contention of the attorney general that where two are charged with a conspiracy and one is convicted, the acquittal of the other upon a separate trial does not affect the previous conviction of the former. It is urged that the true rule is that a verdict must be consistent with itself and contain no inherent repugnancy and that the rule that the acquittal of one of two alleged conspirators operates as a discharge of the other applies only, if at all, where they are tried together to one jury.

The rule contended for by the defendant is an outgrowth of the principle that a verdict must be consistent and devoid of repugnancy. During the periods when the early English cases were written, the persons charged with conspiracy were all tried together. The rule was then invoked that if two conspirators were tried together, necessarily on the same evidence and under the same circumstances, and the nature of the crime requiring the guilty confederation of at least two persons, the conviction of one and the acquittal of the other resulted in such an inconsistent verdict that it could not be permitted to stand. With this view, al-

though the situation is not now before us, we are in accord.

That uncertainty has crept into the law where one of two defendants has been convicted and the other acquitted in separate trials is apparent from the decisions. A text-writer states the existing situation in the following language: "As a matter of procedure it would seem that if A. be indicted and tried alone for conspiring with others, he could be lawfully convicted, though the others referred to or included in the indictment had not appeared or pleaded (a), or were dead before (b) or after the indictment was preferred (c), or before they pleaded not guilty (d), or were subsequently and separately tried. But it is not settled whether, in cases of separate trials of the conspirators, the acquittal of those tried later would avoid the conviction of one earlier tried and convicted for the same conspiracy." 1 Russell, Crimes and Misdemeanors (8th ed.) 152.

The authorities cited in *State v. Tom, supra,* the case from which the rule announced in the *Sherman* case originated in this country, do not appear to sustain that decision. In fact the opinion states that upon the precise question then before the court, "I have been able to find no adjudged case."

Briefly stated, the authorities cited to sustain *State v. Tom, supra,* are as follow: In *Rex v. Sudbury,* 1 Lord Raymond (Eng.) 484, several defendants were indicted for riot. The jury convicted two and acquitted the rest. More than two participants being required to constitute the crime, the court discharged all. They were all tried jointly, the distinguishing feature. In *Rex v. Scott,* 3 Bur. (Eng.) 1262, six were indicted for riot; two were not tried, two acquitted, and two convicted. The court refused to discharge the guilty ones, although three participants in the act were necessary, on the theory that it must be presumed under such circumstances that the guilty defendants participated with those that were not tried. And in *Rex v. Kinnersley,* 1 Str. (Eng.) 193, and *Rex v. Niccolls,* 2 Str. (Eng.) 1227, the defendants were charged with conspiracy. As interpreted in *State v. Tom, supra,* in each of them, one defendant was

found guilty; but in one of them the other was dead, and in the other, not in court. In both instances a discharge was denied "because the guilt of the codefendant *was found,* as against the convicted defendant, and there was then no repugnancy; and where the one was dead, there could not be another trial, and therefore no contradiction; and where one had not pleaded, though he was not concluded by the first verdict, and might traverse his own guilt, and be subsequently acquitted, yet the possibility of it should not intercept the stroke of justice on him already found guilty." The effect of the holdings prior to *State v. Tom, supra,* and cited in that case was that if two be charged and one only convicted, the other being dead or not in court, the conviction should stand. And if two were tried jointly, one being convicted and the other acquitted, such verdict was inconsistent and repugnant and required the discharge of both. But there is no previous case holding that verdicts on separate trials must be consistent as to result in such cases.

After a consideration of the authorities we are convinced that the cases of *State v. Tom, supra, Casper v. State, supra,* and *Sherman v. State, supra,* rest upon the fallacy that because one is acquitted in a separate trial, therefore the other could not have been guilty of the offense together with the one that was acquitted. We think that the verdict of a jury on a separate trial, finding one of two persons charged with conspiracy to be guilty, concludes also the guilt of the other for the purposes of that trial, otherwise no conviction could have been had. The guilt of the codefendant was found as against the convicted defendant. This element of the crime having been established as against the convicted defendant, the crime was complete and the conviction final as to him, irrespective of what some other jury on different evidence might decide. The rule cannot logically be otherwise. The subsequent acquittal of the other necessarily amounts to no more than that there was a failure of proof as to him. But if they were tried together, a failure of proof as to one would amount to a failure of proof as to both because the evidence was the same. It

seems to us that reason and sound logic do not support the rule where one of two conspirators is convicted in a separate trial, that he shall be discharged because the second may be acquitted for a multitude of reasons having nothing to do with his guilt. The acquittal of the second conspirator could well result from the death or absence of an important state witness, the incompetency of a confession of the convicted conspirator in the second trial, the incompetency of a plea of guilty entered by the convicted conspirator at his trial, or for any other reason that would amount to a failure of proof.

The rule contended for by defendant requires consistent verdicts at separate trials. We know of no sound reason for demanding such a result, unless such verdicts stem from the identical evidence. It is not unusual in other types of crimes for one of two defendants to be convicted and the other to be acquitted where both equally participated in the same crime. Can it be said that the law is so consistent that the acquittal of one affects a discharge of the other? The question answers itself. It seems illogical to say that after one conspirator has been properly convicted he may have a second opportunity to escape punishment by the verdict in another case in which the evidence was altogether different and in which he may not even appear or testify. If the charged conspirators desire all the benefits of a joint trial, a demand for a separate trial should not be made. If one desires a separate trial and the other does not, the statutory provision on the subject must be resorted to. But we can see no reason why the benefits, if any, of a joint trial should accrue to either or any of those charged where separate trials have been demanded and granted as the statute requires. We conclude therefore that the rule requiring the discharge of a convicted conspirator upon the acquittal of his coconspirator at a separate trial is not supported by sound logic or well reasoned authority. We therefore overrule *Sherman v. State, supra,* and find that the trial court properly refused to discharge the defendant upon the acquittal of Natalie Stromberger at a separate trial.

Misconduct of the jury is charged. We have examined the record and find that the alleged misconduct pertains to matters which clearly inhere in the verdict and consequently does not constitute misconduct.

The defendant complains of the prejudice of the trial court and refers to the "sordid attempt" of the trial court to compel defendant to waive his right of appeal. We think the statement is most unfair. The record discloses that the trial court held a lengthy hearing at which witnesses were heard and the evidence carefully considered concerning the advisability of a parole. It is evident from the record that the trial court was desirous of granting a parole to the defendant and that statements made by the defendant himself precluded such a result. In an attempt by the court to discover the then state of mind of the defendant, whether after conviction he realized his guilt and disclosed a penitent attitude, the defendant persisted in stating that he had done no moral wrong and that he was then undecided as to whether he would continue to contest with the state as to his guilt. Such a state of mind is not one that requires the trial court to exercise his power to suspend the proceedings and grant a parole as provided in section 29-2214, Comp. St. 1929.

AFFIRMED.

Rose and Eberly, JJ., not participating.