UNITED STATES of America,
Plaintiff,

v.

78.61 ACRES OF LAND IN DAWES AND
SIOUX COUNTIES, NEBRASKA, State
of Nebraska et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

46.27 ACRES OF LAND IN BROWN
COUNTY, NEBRASKA, State of Ne-
braska et al., Defendants.

UNITED STATES of America,
Plaintiff,

v.

63.73 ACRES OF LAND IN BROWN AND
ROCK COUNTIES, NEBRASKA, State
of Nebraska et al., Defendants.

Civ. 734L, 738L, 785L.

United States District Court
D. Nebraska.

March 13, 1967.

Richard L. Edgerton, Asst. U. S. Atty., Omaha, Neb., for plaintiff.

Bernard L. Packett, Asst. Atty. Gen., Lincoln, Neb., for defendant, State of Nebraska.

## MEMORANDUM

VAN PELT, District Judge.

This is a condemnation action brought by the government for property to be used by the Bureau of Reclamation in connection with the South Dakota Transmission System, Missouri River Basin Project. The estate taken, insofar as the present matter is concerned, is set forth in paragraph 4(a) of the complaint in Civil 738L:

"The right, title and interest remaining in the State of Nebraska, if any, of, in and to the right-of-way for a lateral necessary to the construction and operation of irrigation works constructed by the authority of the United States, after the grant heretofore made by the State of Nebraska to the United States of said right-of-way for said purposes, in accordance with and pursuant to Section 46–249, Revised Statutes of Nebraska, 1943, Reissue of 1960, so as to enable the United States in its acceptance, use and enjoy-

ment of said right-of-way over lands belonging to the State of Nebraska, to construct, operate and maintain a lateral, together with such other structures, installations and facilities used or useful in the construction, operation and maintenance of said lateral, over and across said lands."

The sole question before the court at this time is whether title to the right-of-way described in paragraph 4(a) above was already in the United States at the time of filing the complaints and declaration of taking. The land was originally acquired by the State of Nebraska pursuant to Section 7 of the Enabling Act of April 19, 1864, 13 Stat. 47:

"And be it further enacted, That sections numbered sixteen and thirty-six in every township, * * * shall be, and are hereby, granted to said state for the support of common schools."

The Nebraska statute upon which the Government bases its contention that title to the right-of-way has been granted to the United States, is

"46–249. There is hereby granted, over all the lands now or hereafter belonging to the State of Nebraska, a right-of-way for ditches, tunnels and telephone and transmission lines necessary to the construction and operation of any irrigation works constructed by authority of the United States; and in all conveyances such right-of-way shall be reserved."

This statute was in effect at the time these proceedings were instituted, and is controlling here although the section has been subsequently amended.[1]

The question is therefore presented whether the Nebraska Legislature had the power to grant to the United States a right-of-way over school lands without

---

1. "46–249. *Irrigation works constructed by authority of United States; right-of-way over public lands; grant; school lands excepted.* There is hereby granted over all the lands now or hereafter belonging to the State of Nebraska, except school lands held in trust by the Board of Educational Lands and Funds, a right-of-way for ditches, tunnels and telephone and transmission lines necessary to the construction and operation of any irrigation works constructed by authority of the United States; and in all conveyances such right-of-way shall be reserved." Neb.Rev.Stat. (Cum.Supp.1965).

compensation. In determining the power of the legislature in dealing with school lands, the court must consider both the limitations imposed by the Nebraska Constitution and the terms of the original grant in the Enabling Act of 1864. The court concludes that each of these sources of limitations prevents the legislature from granting a right-of-way over school lands without compensation, even when the grantee is the United States.

The Constitution of Nebraska provides for the management and disposition of the School Land Trust as follows:

"All funds belonging to the state for educational purposes, the interest and income whereof only are to be used, shall be deemed trust funds held by the state * * *. And such funds with the interest and income thereof, are hereby solemnly pledged to the purposes for which they are granted and set apart, and shall not be transferred to any other fund for other uses." Art. VII, Sec. 9, Neb. Const.

■■ In applying a Nebraska constitutional provision, this court is bound by the interpretations of the Nebraska Supreme Court. That court has frequently stated that the school lands are held in trust by the state. See, e. g., State ex rel. Ebke v. Board of Educational Lands & Funds, 159 Neb. 79, 65 N.W. 2d 392, 397 (1954). In State ex rel. Johnson v. Central Nebraska Power & Irrig. Dist., 143 Neb. 153, 8 N.W.2d 841 (1943), the question before the court was whether the legislature had power to grant to a public power and irrigation district a right-of-way for an irrigation canal over school lands. In holding that the legislature had no such power, the court stated:

"The lands here, by the Constitution and congressional act, belong to the public school system of the state and the state is but the trustee thereof. The state as trustee is without power through legislative means or otherwise to bestow a special benefit upon the defendant or any other person or corporation, public or private, at the expense of the *cestui que trust*, the public school system of the state.

"The acts or parts of acts purporting to grant to public corporations or persons engaged in construction, operation and maintenance of works of internal improvement the right to obtain rights of way over and across public school lands without compensation are hereby declared to be unconstitutional, null and void." Id. at 167, 8 N.W.2d 849.

The government contends that the above case is distinguishable in that there was no benefit flowing to the land over which the right-of-way was taken or to any other school land whereas in the instant case the irrigation project constitutes a benefit to the lands of the entire state, including school lands.

■■ The purpose of the legislature in enacting § 46–249 was undoubtedly to encourage the construction of irrigation works. For such purpose the legislature could undoubtedly grant a right-of-way over land owned unconditionally by the state. School lands, however, are held by the state as trustee, and are available to the state only for the support of common schools. As trustee, the state can dispose of school lands only for the benefit of the cestui que trust. State ex rel. Ebke v. Board of Educational Lands and Funds, 154 Neb. 244, 47 N.W.2d 520, 523 (1951).

■ School lands naturally share in the benefits from projects which are for the general public benefit. Such a sharing with the rest of the state is not a sufficient compensation to enable the trustee to dispose of school lands for projects for the general public benefit. The trust nature of the school lands dictates that these lands will be disposed of for the benefit of the common schools as opposed to the general public benefit.

■ Of course, benefits to the general public are not synonymous with benefits to the common schools. Presumably all acts of the legislature are for the general public benefit. The whole purpose of placing school lands in trust was so that the proceeds from this trust would not be

confused with and utilized for projects for the general public benefit.

■ The court holds, therefore, that former section 46–249, Revised Statutes of Nebraska, 1943, Reissue of 1960, insofar as it purports to grant a right-of-way over school lands without compensation, is unconstitutional, null and void under Nebraska law.

■ As stated above, the Nebraska law is not the only source of limitation on the power of the state in dealing with school land. The original grant to the State in the Enabling Act of 1864 also contains implied restrictions which are binding notwithstanding the law of Nebraska. Section 7 of the Enabling Act simply states that the lands are granted to the state "for the support of common schools." The act did not contain the express restrictions which were incorporated in later, similar acts. See generally, Lassen v. Arizona ex rel., Arizona Highway Dept., 385 U.S. 458, 87 S.Ct. 584, 17 L.Ed.2d 515 (Jan. 10, 1967). Nevertheless, the grant was undoubtedly in trust for a specific purpose as was recognized by the Supreme Court of Nebraska:

> "The provision of the enabling act making the grant, and of the Constitution of 1866 setting apart and pledging the principal and income from such grant * * * and the subsequent act admitting the state into the Union under such Constitution constituted a contract between the state and the national government relating to such grants. * * * [T]he state was and still is under a contractual as well as a constitutional obligation to refrain from disposition or alienation of the use of this property except as allowed by the enabling act and the Constitution." State ex rel. Johnson v. Central Nebraska Public Power & Irr. Dist., 143 Neb. 153, 8 N.W.2d 841, 847–848 (1943).

In determining what constitutes a breach of this trust it is helpful to examine the interpretations of other enabling acts, albeit those acts contain certain express restrictions not present in the Enabling Act of 1864.

In Lassen v. Arizona ex rel. Arizona Highway Dept., supra, the court interpreted the New Mexico-Arizona Enabling Act, 36 Stat. 557. The Court held that the state must actually compensate the trust in money for the full appraised value of any right-of-way it obtained over trust lands. The Court stated "We must nevertheless conclude that the purposes of Congress require that the Act's designated beneficiaries 'derive the full benefit' of the grant." Id. 385 U.S. at 468, 87 S.Ct. at 589. The state may not diminish "the benefits conferred by Congress and in effect [deflect] a portion of them to the State's highway program." Id., 385 U.S. at 469, 87 S.Ct. at 590. The Court also stated, "All these restrictions in combination indicate Congress' concern both that the grants provide the most substantial support possible to the beneficiaries, and that only those beneficiaries profit from the trust." Id. 385 U.S., at 467, 87 S.Ct. at 589. The Court concluded "We hold therefore that Arizona must actually compensate the trust in money for the full appraised value of any material sites or rights of way which it obtains on or over trust lands." Id. 385 U.S., at 469, 87 S.Ct. at 590.

As stated above, these statements were made concerning an Act with many express restrictions and considerable legislative history on point. The Nebraska Enabling Act contains neither. From Lassen v. Arizona, supra, it seems clear, however, that a sharing by the trust property in the general benefits to the state of an irrigation project is not sufficient compensation to the trust. Any diminution in the value of the trust is prohibited.

■ Nor does the fact that the United States is the grantee alter the principle that the res of the trust may not be depleted. As stated by the Eighth Circuit, although in a somewhat different context:

> "In relation to the sovereign rights and constitutional obligation of the

United States, the school lands therefore could not be said to be in any different position as to value and just compensation than the other lands of the community." Nebraska v. United States, 164 F.2d 866, 869 (8th Cir. 1947)

 The state cannot, therefore, grant to anyone, including the United States, a right-of-way over school lands without compensation.