ROGER EDWARD GARDNER *v.* STATE OF
MARYLAND

[No. 494, September Term, 1978.]

*Decided January 12, 1979.*

The cause was argued before MOORE, LOWE and MELVIN,
JJ.

*David Freishtat,* with whom were *Freishtat & Schwartz* on
the brief, for appellant.

*Deborah K. Handel, Assistant Attorney General,* with
whom were *Francis Bill Burch, Attorney General, Charles E.*

Wehland, State's Attorney for Howard County, Ronald L. Spahn and David M. Thomas, Assistant State's Attorneys for Howard County, on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

— the hobgoblin [1] —

Over a hundred years ago, Stephen's *General View of Criminal Law* pointed out that the law of conspiracy is the most complete illustration of the fiction consisting of treating as a crime, not the very acts which are intended to be permeated, but certain ways of doing them. Fitz. St. 62. Because the gist of the offense of conspiracy is the *combination* which is formed for an unlawful purpose, the impossibility of one person forming a combination with himself is too obvious for discussion.

Applying that premise, it would seem "logically" to follow that where one of two supposed confederates merely feigns acquiescence without criminal intent, the other party cannot be guilty of conspiracy since there is no second party with whom he could culpably conspire. *See Regle v. State,* 9 Md. App. 346, 355 (1970). That would seem a "logical" extension of a rule; but as we are too often wont in the law, the original "two to tango" maxim rings *so* "logically" that it is applied as stare decisis rather than recognized for the stare dictis that it is.

We have extended that supposition to everything that seemed "logically" to follow from it. So hide-bound did it become that in hoary texts can be found an example that because a man and wife are considered one person, they cannot be considered as conspirators between themselves; [2] nor has that particular fiction been altogether abrogated by the passage of time. [3] *See Dawson v. United States,* 10 F. 2d 106, 107 (9th Cir. 1926).

---

1. *See* R.W. Emerson, *Essay on Self Reliance* (1841).
2. S. Harris, *Principles of Criminal Law* 109 (1880).
3. R. Perkins, *Criminal Law* 622 (2d ed. 1969).

Laboring under the assumption that the law is necessarily "logical," this need for at least two guilty minds to combine in order to conspire, was forged into a rule, the "rule of consistency" — an euphemism that, in a judicial system that relies for its stability upon consistency, further solidified the rule it described. As our Court has heretofore described the rule of conspiratorial consistency, it holds that:

> "[O]ne defendant in a prosecution for conspiracy cannot be convicted where all of his alleged co-conspirators, be they one or more, have been acquitted or discharged under circumstances that amount to an acquittal." *Regle v. State,* 9 Md. App. at 351.

Without stating that law is not always "logical," we premised our reasoning in applying that rule upon the rationale that:

> "[I]t is illogical to acquit all but one of a purported partnership in crime; that acquittal of all persons with whom a defendant is alleged to have conspired is repugnant to the existence of the requisite corrupt agreement; and that regardless of the criminal animus of the one defendant, there must be someone with whom he confected his corrupt agreement, and where all his alleged co-conspirators are not guilty, a like finding as to him must be made." *Id.* at 351-352.

We noted that some common sense has crept into the inconsistency bar to conviction. The rule does not apply to mere *procedural* impossibility of conviction of co-conspirators, but rather requires their acquittal. The conviction of a single conspirator in a conspiracy case where all co-conspirators were: 1) granted immunity, *Hurwitz v. State,* 200 Md. 578 (1952); 2) enjoyed diplomatic immunity, *Farnsworth v. Zerbst,* 98 F. 2d 541 (5th Cir. 1938); 3) unknown to the prosecution, *Adams v. State,* 202 Md. 455 (1953); 4) granted a consensual nolle prosequi, *Greathouse v. State,* 5 Md. App. 675 (1969), *cert. denied,* 253 Md. 734 (1969); or, 5) dead or unapprehended, *State v. Tom,* 13 N. C. 569, 575 (1830),

citing *Rex v. Kinnersly,* 1 Str. 193 and *Rex v. Niccolls,* 2 Str. 1227, see Perkins, *supra,* is not precluded as it might be if all co-conspirators were adjudicated innocent. Such procedural impossibilities do not act as a bar to the conviction of the remaining conspirator.

Despite our recognition of those limitations we stretched the consistency rule a step farther in *Regle.* Based upon another legal fiction — that an insane person is incapable of forming a criminal intent, *Bradford v. State,* 234 Md. 505, 512-514 (1964) — we held:

> "[W]here only two persons are implicated in a conspiracy, and one is shown to have been insane at the time the agreement was concluded, and hence totally incapable of committing any crime, there is no punishable criminal conspiracy, the requisite joint criminal intent being absent." *Regle v. State,* 9 Md. App. at 355.

There having been no prior adjudication of the co-conspirator (Fields) in *Regle,* we remanded for retrial with the following directive:

> "We thus deem it essential in the interest of justice that appellant's conspiracy conviction be reversed and that the State be afforded the opportunity to retry the case in light of the principles of law which we consider relevant and controlling. If, upon retrial, the State intends to charge only Fields and appellant as conspirators, and the evidence properly shows that Fields was legally insane at the time the agreement to perpetrate the robbery was concluded, then even though Fields has not been acquitted of the offense of conspiracy by a judicial determination that he was insane, nevertheless the requisite *joint* criminal intent being absent, appellant cannot properly be convicted of engaging with Fields in a criminal conspiracy." *Id.* at 357.

— the facts —

Appellant in the case at bar relies primarily upon the *Regle* holding in asking that we reverse his conspiracy conviction as rendered by the Circuit Court for Howard County. The appellant, Roger Edward Gardner, was a murderer for hire who conspired with Ralph Lubow to murder Morton Hollander and Alvin Blum. He conditionally "subcontracted" the Blum "hit" to one Timothy McDonald in the event Hollander's death did not effect the result sought by Lubow. McDonald immediately became a police informant who only feigned acquiescence; thus McDonald lacked the criminal intent necessary to a conspiratorial agreement (*see Regle, supra* at 355). Consequently, a joint indictment charged only Gardner and Lubow with conspiring together to murder Hollander and Blum, and no other persons known or unknown were named.

Gardner sought and received a severance. He was tried prior to Lubow and, on December 12, 1977, was convicted by Judge James Macgill of conspiracy and solicitation to murder. In accord with our *Kelley v. State,* 12 Md. App. 251, 258 (1971), *cert. denied,* 263 Md. 716 (1971), Judge Macgill held that:

> "[T]he evidence establishes beyond a reasonable doubt that there was an understanding or a meeting of minds between Mr. Gardner and Mr. Lubow to use a word which has been used, more often than not, in the testimony in this case, 'to hit' these two gentlemen."

Gardner had relied heavily upon the *Regle* case at trial and placed in issue Lubow's mental competence as his primary defense.[4] Gardner's attorney called Lubow to take the stand for the limited purpose of waiving his psychiatrist-patient privilege. Md. Cts. & Jud. Proc. Code Ann. § 9-109 (d) (6) (Supp. 1978) (effective July 1, 1977). Judge Macgill met the issue of Lubow's competence head on in his opinion. After reviewing the holding of *Regle,* he addressed the evidence as presented in the case, finding factually that Lubow was

---

4. Appellant first put into issue the sanity of his alleged co-conspirator. The State countered the defense's evidence at the rebuttal stage.

capable of the prerequisite criminal intent to participate in a conspiracy with Gardner. Gardner was sentenced on March 21, 1978 to two five year terms for conspiracy and one for solicitation to murder, all to be served concurrently.

Seven months after conviction (but four months after sentencing), Ralph Lubow was found "not guilty" (by reason of insanity) of having conspired with Gardner for the murder of Hollander and Blum. Appellant now calls upon us to reverse his conviction under the *Regle* holding because of its "repugnant" inconsistency with the Lubow result in order

> "to place Lubow's subsequent acquittal within the record, [so that] justice would be best served by addressing through judicial notice the *merits* of the issue raised by that [Lubow] acquittal." [5]

Unless we are prepared to rescind our *Regle* decision, what appears at first blush to be the next logical progression of the consistency rule as extended by *Regle* would provide an easy answer favorable to appellant. But *Regle,* like most of our cases, is only authority for what it actually decided. It does not necessarily follow that it can be quoted for a proposition that may seem to follow "logically" from it, as pointed out by Lord Halsbury in *Quinn v. Leathern,* [1901] A. C. 495, 506. "Such a mode of reasoning assumes that law is a logical code whereas every lawyer must acknowledge that the law is not always logical at all."

As beguiling as such an easy answer would be, we are troubled that the very issue upon which Gardner now relies for his release (*i.e.,* Lubow's mental incompetency) formed the heart of Gardner's defense in his own trial, and was fully tried and definitively decided by the Gardner court. Appellant did not object below to the trial proceedings on the insanity issue or to the sufficiency of the evidence upon which Judge Macgill based his finding of sanity. See Md. Rules 1085 and 1086. To the contrary, he promulgated the consideration of

---

5. After Lubow's acquittal Gardner, who had already appealed his case to this Court, filed a "Motion for: Remand For Further Proceedings" pursuant to Md. Rule 1071, on August 26, 1978. We denied the motion on September 8, 1978. Appellant then asked that we take judicial notice of the acquittal in the present appeal.

that issue. What appears a "logical" extension of the rule of consistency would provide an illogical result.

— the insanity defense —

Undergirding Gardner's contention is the presupposition that Lubow's sanity can only be conclusively litigated by Lubow. It presumes that any litigation hinged upon the issue of Lubow's competency is temporary, despite its final determination by another court, and is subject to stand only if a consistent verdict evolves from Lubow's trial — if, indeed, he is tried at all. There are, however, fatal weaknesses in appellant's position.

The rule of consistency does not require an *adjudication* of guilt of a co-conspirator. As indicated above, the rule does not foreclose conviction where a co-conspirator may have been granted immunity *(Hurwitz, supra)*, be unknown *(Adams, supra)*, unapprehended or even dead *(Perkins, supra)*,

> "so long as the disposition of the case against a co-conspirator does not remove the basis for the charge of conspiracy, a single defendant may be prosecuted and convicted of the offense . . . ." *Regle v. State,* 9 Md. App. at 352.

If the State had decided not to prosecute Lubow, then Gardner, having injected Lubow's competency as a defense, would be bound by the verdict in his case. *Regle* decided that precise issue. Upon the remand there, Regle was to be exonerated if "the evidence properly shows" in *his* case that his co-conspirator was insane. Implicit in those instructions was our recognition that the co-conspirator would never be tried, because the record showed that the co-conspirator "had been examined by State psychiatrists . . . and found 'not guilty by reason of being insane at the time of the alleged crime.' " *Id.* at 350. It is apparent that we expected the issue of the co-conspirator's sanity to be an issue to be decided only in Regle's case.

In *Regle,* we did not address what evidence was necessary for a factfinder to conclude that "the requisite *joint* criminal

intent" was absent, other than to point to our reliance on *Bradford, supra,* 234 Md. at 514, for the premise that "an insane person is mentally incapable of forming a criminal intent." *Regle v. State,* 9 Md. App. at 355. But that premise, while true under the *McNaughten* test for insanity used at the time *Bradford* was written, is only a half truth under the current Maryland substitution of the American Law Institute test, adopted by Chapter 709, Laws of Maryland, 1967 (current version at Md. Ann. Code art. 59, § 25 (Repl. Vol. 1972)). See *Conn v. State,* 41 Md. App. 238 (1979); *McCracken v. State,* 2 Md. App. 716 (1968), *cert. denied,* 250 Md. 732 (1968). Under the *McNaughten-Spencer* test (*see Spencer v. State,* 69 Md. 28 (1888)), the only question for the factfinder was the ability of the offender "to distinguish between right and wrong and understand the nature and consequences of his act as applied to himself . . . ." *Rowe v. State,* 234 Md. 295, 305 (1964), *cert. denied,* 379 U. S. 924 (1964). Obviously, under that test, the *Bradford* Court was correct in pointing out that an insanity issue involved "the *mens rea* or intent which is an essential element of the offense which the State must prove," *Id.* at 514, or, as broadly translated by Chief Judge Murphy for our Court in *Regle,* "an insane person is mentally incapable of forming a criminal intent."

Since the 1967 modified adoption of the American Law Institute test by the Legislature, that is no longer necessarily true.

> "The [1967] legislation broadened the previous 'right-wrong' test by making the insanity defense available to an offender who, although he could distinguish between right and wrong and could understand the nature and consequences of his acts at the time of the commission of the crime, could not, as a result of a mental disease or defect, conform his actions to the requirements of the law." *Conn v. State,* 41 Md. App. 238 at 244.

Even at the time of *Regle,* had we been called upon to set forth what proof of the co-conspirator's insanity would redound in Regle's release, the statute would have compelled

our explanation that only one of the two alternate tests for insanity would have sufficed. Md. Ann. Code art. 59, § 25 (a) (1972) states that:

> "A defendant is not responsible for criminal conduct and shall be found insane at the time of the commission of the alleged crime if, at the time of such conduct as a result of mental disorder, he lacks substantial capacity *either* to appreciate the criminality of his conduct *or* to conform his conduct to the requirements of law." (emphasis added).

Worded in the disjunctive, the statute provides an alternative escape for an offender who may have had the *mens rea* prerequisite to a crime requiring it (*i.e.,* who does appreciate the criminality of his conduct). Despite finding such criminal intent in an accused, he is to be "found insane" (and thus not guilty) if he "cannot conform his conduct to the requirements of law" — which requirements he may fully appreciate. In essence, he escapes responsibility for his own overriding lack of will power, rather than for any absence of criminal intent. Such a person could provide the "requisite *joint* criminal intent" to conspire, but might himself escape punishment because "the devil made him do it".

When Gardner was tried, his primary defense was Lubow's insanity. Lubow took the stand for the purpose of waiving his right to suppress his psychiatrists' testimony. Although Lubow declined personally to testify on fifth amendment grounds, Gardner raised no objections nor sought any relief, such as a continuance. Judge Macgill, as factfinder, expressly stated not only that he found that Lubow was able to conform his conduct,

> "but that Mr. Lubow, at least as I interpret the testimony of the majority of the psychiatrists, was suffering from a mental disorder but they seemed to have agreed generally, if not entirely, that he did have the capacity — substantial capacity to appreciate the criminality of his conduct during the period in question. The division of opinion was whether he had substantial capacity to conform his

conduct to the requirements of law. That is the issue which I have to resolve as the trier of facts in this case. . . . Well, considering the testimony, gentlemen, I find that the State has met its burden and has established beyond a reasonable doubt that Mr. Lubow was, although he suffered from a mental disorder, he did, I should say, have substantial capacity to appreciate the criminality of his conduct during the period in question and he did have substantial capacity to conform his conduct to the requirements of law during that period and, therefore, I rule in the legal sense that he was not insane during that period and that, therefore, the conspiracy was formed. In short, Mr. Lubow, along with Mr. Gardner, in the test laid down in Regle v. State, had shared with Mr. Gardner — Mr. Lubow shared with Mr. Gardner the joint intent to conspire to commit a crime and that the criminal conspiracy as charged by the State was present."

When Lubow was tried 7 months later, the jury was not asked why it found Lubow not responsible, nor are we permitted to look behind the verdict for the reasons therefor. *Cf. Williams v. State,* 204 Md. 55, 67 (1954); *Goldsborough v. State,* 12 Md. App. 346, 358 (1971). That Lubow's jury might have agreed with Judge Macgill that Lubow had the requisite criminal intent (*i.e.,* an appreciation of the criminality of his conduct) destroys the chimera of inconsistency, regardless of whether it disagreed with the judge on the alternative conduct conformity test.

Analogizing: the defense of insanity, like that of justification and self-defense, is somewhat comparable to the old "confession and avoidance." The latter admitted the truth of the charges but proceeded to prove new matter which tended to deprive the facts admitted of their ordinary legal effect. The former presupposes the commission of the proscribed conduct but denies the prerequisite mental state. It admits the crime — the corpus delicti and agency — but seeks to avoid the responsibility.

When the defense is raised by an accused himself, even in a conspiracy case, he will escape punishment by either alternative, *i.e.,* whether he cannot appreciate the criminality of his participation *or* if he recognizes the criminality, but simply cannot conform to the law. The statute, however, does not offer that full defense to any but the accused. Such benefit as might there flow to Gardner would have come only because the disposition of a case against his co-conspirator may have removed the basis for the charge of conspiracy. *See* Annot., 72 A.L.R. 1180 (1931) and Annot., 91 A.L.R.2d 700 (1963). Not only is Gardner saddled with an adjudication to the contrary in his own case, he cannot assure us that Lubow's trial resulted in removing the basis of the charge.

Gardner was so certain that he and Lubow had contractually had a meeting of minds, that he subcontracted part of his performance commitment. At the time, he was satisfied (as was Judge Macgill) that Lubow was sufficiently competent to contract for murder.

— the severance —

Along with the Fifth Circuit Court of Appeals, we are impressed with what appears to be the beginning recognition that the rule of consistency has another common sense limitation. *See United States v. Musgrave,* 483 F. 2d 327, 333 (5th Cir. 1973). In *Platt v. State,* 143 Neb. 131, 8 N.W.2d 849 (1943), the Court noted that the rule of consistency was predicated upon the early English cases in which persons charged with conspiracy were all tried together. Obviously when both or all conspirators rested upon the same evidence in a single trial, and the nature of the crime required a guilty confederation of at least two persons, the conviction of one and acquittal of the other was so inconsistent that the guilty verdict could not stand.

That reasoning is not applicable where the defendants are separately tried. When one of two conspirators is convicted before the other, this concludes the guilt of the untried conspirator for the purposes of that trial. *Platt v. State,* 8 N.W.2d at 855. Necessarily the guilt of the codefendant was

found as against the defendant, especially where the codefendant's capacity was raised in defense of the conspirator on trial. This element of the crime (*i.e.,* a co-conspirator capable of conspiring) having been established (as to Gardner here), the crime was complete and the conviction final (as to him), regardless of what another jury with an additional issue upon which to deliberate, might conclude. *Id.* at 855.

Even "logic" does not support the rule of consistency where a co-conspirator may have been subsequently acquitted for reasons having nothing to do either with his guilt, or with his criminal intent. We agree wholeheartedly with the *Platt* opinion (recognized in *Musgrave* as a "scholarly opinion" and "an exhaustive discussion"). It seems "illogical" to say that after one conspirator has been properly convicted he may have a second opportunity to escape punishment in a codefendant's case, in which the question to be decided comprehends far greater latitude than the issue in his own.

> "If the charged conspirators desire all the benefits of a joint trial, a demand for a separate trial should not be made. If one desires a separate trial and the other does not, the statutory provision on the subject must be resorted to. But we can see no reason why the benefits, if any, of a joint trial should accrue to either or any of those charged where separate trials have been demanded and granted as the statute requires." *Platt v. State,* 8 N.W.2d at 855-856.

Our "bottom line" then (if such must exist in appellate opinions) is our conclusion that:

> "[A]fter a severance a conviction of one of two persons alleged to be conspirators establishes the guilt of both for purposes of that trial and an acquittal of the other defendant on a subsequent trial indicates only a failure of proof as to him, leaving the conviction of the first defendant undisturbed." 16 Am. Jur. 2d *Conspiracy* § 33 (1964).

*See People v. Holzer,* 25 Cal.App.3d 456, 102 Cal.Rptr. 11, 12-13 (1972). This embryonic "trend" is a "logical" progression of the holding of *Jeter v. State,* 261 Md. 221 (1971). In that case, Jeter was jointly indicted with another for storehouse breaking and felony murder. At his own request he received severance and was tried first, found guilty and appealed to this Court. While the appeal was pending the codefendant, the alleged "trigger man" and principal in the first degree, was acquitted of any unlawful homicide. We concluded that this did not affect our opinion, and affirmed. *Jeter v. State,* 9 Md. App. 575 (1970). We were affirmed by the Court of Appeals which tersely held that following severance:

> "[T]he subsequent acquittal of a principal in the first degree does not affect the trial or conviction of a principal in the second degree." 261 Md. at 223.

Despite appellant's proliferate authority (including *State v. Buchanan,* 5 H. & J. 317, 500 (1821)) [6] for the principle that the rule of consistency applies to single defendants remaining untried after acquittal of all alleged co-conspirators, as well as to jointly tried defendants, he provides no holding upon similar sequential trial positions after severance that would be contrary to the Nebraska and California cases. Our own research has unearthed only one, an English case at the turn of the century, *Rex v. Plummer,* 2 K.B. 339, 20 Cox C.C. 269 (1902), and that factually falls somewhere between a joint and separate trials. *Id.* at 345, 20 Cox C.C. at 272.

In *Plummer,* one of several conspirators pled guilty. His co-conspirators defended and were acquitted. The primary opinion rendered held that "the trial ought to be regarded in substance as joint, and that the plea of guilty ought not to be followed by judgment." *Id.* at 272. Plummer was permitted to withdraw his plea. While recognizing "that the course which we cannot hold to be illegal might be used to defeat the

---

6. State v. Buchanan, relied upon by appellant, does not provide binding authority on the point in issue. The citation to p. 500 of 5 H. & J. refers to a Reporter's Note dealing with the subsequent proceedings of that case upon remand to the trial court.

ends of justice," Chief Justice Lord Alverstone felt that he must concur, "because we can find no reason for dissenting." *Id.* at 275.

Our thought processes are not so wanting, nor were the New Jersey Court's in *State v. Oats,* 32 N.J. Super. 435 (1954), where the defendant and another were indicted for conspiracy to sell narcotics. The defendant entered a plea of *non vult* under which he was convicted. The other defendant was later found not guilty of such conspiracy, and it was held that the conviction of the defendant under the conspiracy count did not violate standards of due process. The issue was whether there had been a "manifest injustice" which, under a New Jersey rule, would permit the judgment of conviction to be set aside and permit the defendant to withdraw his plea of guilty or *non vult.* That case is significant (if at all) in finding that the inconsistency was not so "shocking [a] violation of fundamental concepts of justice" as to require the invocation of New Jersey's rule.

Not only do we agree with the conclusion there reached, but Simon-like advance one giant step beyond. To acquit where guilt is confessed or conclusively proven solely to effect a "logical consistency" pits logic against common sense and permits the latter to fall. Worse yet, it returns frighteningly dangerous criminals unpunished to society which in itself is a "shocking violation of fundamental concepts of justice."

— the solicitation —

This leads to the second question raised on appeal by Gardner. It is one which is reached with far fewer conflicting principles of "logic" and not nearly as many words. He argues that:

> "The Conviction Of Roger Gardner For Solicitation Should Be Reversed For The Reason That (a) Timothy McDonald Was Never Actually Directed To Proceed With A Murder, And (b) Payment Of A Sum Certain, Which Payment Never Occurred, Was A Condition Precedent To Any Contemplated Action By McDonald".

The crime of solicitation requires neither a direction to proceed nor the fulfillment of any conditions. It is, in essence, asking a person to commit a crime. R. Perkins, *Criminal Law* 587 (2d ed. 1969). The gravamen of the offense is in the urging. *Cf. Cherry v. State,* 18 Md. App. 252, 258 (1973). In all likelihood, most criminal "solicitations," as the word is commonly understood, carry conditional offers of various types of compensations and are probably declined by the solicited party, but solicitations they would be nonetheless. *E.g.,* Md. Ann. Code art. 27, § 4 (Repl. Vol. 1976).

Our review of the record finds that the trial judge was amply justified in finding that the evidence "clearly established that Mr. Gardner did, in fact, unlawfully solicit and incite Mr. McDonald to murder Mr. Blum. . . . and I think the clincher on that is the — actuality of the solicitation — is the adoption and the handing over of the gun and ammunition." Md. Rule 1086.

*Judgments affirmed.*
*Costs to be paid by appellant.*