**UNITED STATES, Appellee,**

v.

**Private (E–1) Marty N. GATES, SSN 533–72–2012, United States Army, Appellant.**

**CM 437924.**

U. S. Army Court of Military Review.

19 Nov. 1979.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Benjamin A. Sims, JAGC, Captain Kevin E. O'Brien, JAGC, Captain Maurice D. Healy, JAGC, and Captain Robert M. Twiss, JAGC, were on the pleadings for appellant.

Lieutenant Colonel R. R. Boller, JAGC, Major David McNeill, Jr., JAGC, Major Michael B. Kennett, JAGC, Captain Brian X. Bush, JAGC, and Captain Charles A. Cosgrove, JAGC, were on the pleadings for appellee.

Before FULTON, WATKINS and LEWIS, Appellate Military Judges.

OPINION OF THE COURT

FULTON, Senior Judge:

Charged with conspiring to commit larceny, the commission of larceny, and house-

---

breaking, Private Gates pleaded guilty and was sentenced by the members of a general court-martial.[1] His sentence, as approved by the convening authority pursuant to a plea bargain, includes a bad-conduct discharge, confinement at hard labor for one year, and forfeiture of all pay and allowances.

■ On mandatory review pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976), only one of the assigned errors warrants discussion.[2] Gates contends that his conviction of conspiracy must be reversed because the only other alleged conspirator has been acquitted of that offense. The Government urges that this well-established rule of consistency should not be applied when an appellant has confessed his guilt by pleading guilty, and, in addition, when the most likely reason the coconspirator was acquitted was that the appellant wrongfully refused to testify at his trial.

The facts are not in dispute. In connection with his plea of guilty, Gates entered into the following stipulation of fact (largely paraphrased from his earlier confession):

On or about 20 August 1978, the accused [Gates] and Private (E–1) Michael E. Lawrence were downtown at the Atlantic Bar in Mannheim when they decided that stealing a stereo would be a good way to make . . . money. They decided to steal SP4 Theodore McCade Jr's stereo. They jumped on a bus and came back to Coleman Barracks. The accused broke the window to McCade's room . . . Lawrence went in thru the window while the accused went around to the door and waited for Lawrence to let him in. Once inside they began disconnecting all the wires on the component set. Then they carried the stereo to the accused's room on post [Coleman Barracks]. The accused and Lawrence took two Sansui speakers, one JVC equalizer, one Pioneer 8-track tape deck and one Kenwood integrated amplifier that belonged to SP4 McCade [of an alleged value of $830.00].

In due course, Gates was charged with conspiring with Lawrence to steal the stereophonic equipment. The overt act alleged in furtherance of the conspiracy was the theft itself.[3]

After Gates' plea and sentencing, Private Lawrence was tried on identical charges of conspiracy to steal the stereo equipment, larceny, and housebreaking. He was acquitted of those offenses and was convicted only of a 32-day unauthorized absence, for

1. The offenses were, respectively, violations of Articles 81, 121, and 130, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 921, and 930 (1976).

2. The Court resolves adversely to appellant a second assigned error, relating to the manner of the referral to trial of the charges against him. The command maintained two general courts-martial: one for trials in the Kaiserslautern (Germany) area and one for the Mannheim (Germany) area. We find that it was the location of Gates' unit, rather than the impermissible exercise of discretion by anyone, which determined, automatically, the particular court or panel for his trial. See United States v. Firmin, 8 M.J. 595 (A.C.M.R.1979).

3. Article 81 of the Uniform Code of Military Justice, 10 U.S.C. § 881 (1976), provides that "[a]ny person subject to this chapter [the UCMJ] who conspires with any other person to commit an offense under this chapter shall, if one or more of the conspirators does an act to effect the object of the conspiracy, be punished as a court-martial may direct." The maximum punishment authorized is the same as that for

the offense which is the object of the conspiracy, except that a death penalty may not be imposed. Manual for Courts-Martial, United States, 1969 (Rev. ed.), par. 127c, Table of Maximum Punishments, Section A, at p. 25–11. The conspiracy and the substantive offense are separately punishable. United States v. Washington, 1 M.J. 473 (C.M.A.1976). The policy of charging both crimes has, however, been questioned. United States v. Beverly, 14 U.S.C. M.A. 468, 473, 34 C.M.R. 248, 253 (1964) (Kilday, J.); cf. United States v. Buchholtz, 47 C.M.R. 177, 179 n.1 (A.C.M.R.) pet. denied, 22 U.S.C.M.A. 632, 48 C.M.R. 999 (1973). The judicial eyebrow rises still further when the overt act proceeds immediately from the agreement, and is the substantive offense itself, although the maximum punishment, unbeknownst to the court members, is significantly limited by a plea bargain. That surely is the "luxuriant pleading" mentioned by Judge Alley in United States v. Dickson, 49 C.M.R. 614, 615 (A.C.M.R.1974). See generally Yawn, Conspiracy, Military Law Review, January 1971, at 211.

which the court members sentenced him to a dishonorable discharge (reduced to a bad-conduct discharge by the convening authority), confinement at hard labor for six months, and forfeiture of all pay and allowances.[4] Although necessarily a matter of conjecture, a possible reason for the outcome of Lawrence's trial was Gates' refusal to testify despite previously having agreed with the convening authority to do so and notwithstanding the added proffer of a grant of immunity.[5]

Gates' argument for dismissal of the conspiracy charge is based on the rule, stated in the Manual for Courts-Martial, that—

If all the persons with whom the accused is alleged to have conspired are tried and found not guilty of the same conspiracy, the accused cannot properly be convicted of that conspiracy. If after the trial and conviction of the accused all the persons with whom he was alleged to have conspired have been found not guilty, the conviction of the accused may not stand. . . .

Manual for Courts-Martial, *supra*, par. 160 at p. 28–8. This statement of the rule of consistency is a distillation of holdings of the Court of Military Appeals in *United States v. Kidd*, 13 U.S.C.M.A. 184, 32 C.M.R. 184 (1962), and several other cases.[6]

The application of this rule to situations in which the coconspirators are tried separately has been criticized as unsound because of the possibility that the acquittal of the other conspirator or conspirators had nothing to do with the guilt of the one whose conviction is in question. That view finds its clearest expression in *Platt v. State*, 143 Neb. 131, 8 N.W.2d 849, 853–56 (1943).[7] The holding of *Platt*—that the rule of consistency should be applied only as to conspirators tried together—was, however, expressly rejected by the Court of Military Appeals in *United States v. Nathan*.[8]

Among Federal courts, *Platt* appears to have found favor only in the Fifth Circuit.[9] In *United States v. Strother, supra*, the Fifth Circuit denied coram nobis relief to a petitioner who had pleaded guilty to con-

---

4. The record of trial (*United States v. Lawrence*, CM 438239) also is before this Court for review pursuant to Article 66, Uniform Code of Military Justice, *supra*. As for our judicial notice of this record, *see United States v. Koneski*, 4 M.J. 911, 914 (A.F.C.M.R.1978); *cf. United States v. Duffy*, 47 C.M.R. 658 (A.C.M.R. 1973).

5. Although Gates' agreement to testify was included in his plea bargain, the provision read as follows: "This agreement is made with the further understanding that in exchange for the convening authority dismissing the charges preferred on 16 December 1978 [evidently charges of additional larcenies and housebreaking], I will testify, if required, in . . . *U. S. v. Lawrence*. . . ." Gates subsequently was tried by a general court-martial on charges of wrongful refusal to answer questions put to him as a witness (Art. 134, UCMJ, 10 U.S.C. § 934 (1976)), and the charges of housebreaking and larceny, which previously had not been prosecuted in consideration of his agreement to testify. He pleaded guilty and was sentenced to an additional two years' confinement, as well as a bad-conduct discharge and total forfeitures. This Court affirmed his conviction in *United States v. Gates*, ACMR No. CM 438240, 25 July 1979 (unpub. mem.). See note 4, *supra*, as to judicial notice.

6. *United States v. Smith*, 20 U.S.C.M.A. 589, 44 C.M.R. 19 (1971); *United States v. Fisher*, 16 U.S.C.M.A. 78, 36 C.M.R. 234 (1966); *United States v. Nathan*, 12 U.S.C.M.A. 398, 30 C.M.R. 398 (1961); *cf. United States v. Doughty*, 14 U.S.C.M.A. 540, 34 C.M.R. 320 (1964); Department of the Army Pamphlet 27–2, *Analysis of Contents: Manual for Courts-Martial, United States, 1969, Revised Edition*, p. 28–2 (July 1970); *accord United States v. Koneski*, 4 M.J. 911 (AFCMR), *aff'd mem. on other grounds*, 6 M.J. 13 (C.M.A.1978).

7. *See also People v. Superior Court*, 44 Cal. App.3d 494, 118 Cal.Rptr. 702, 704–05 (1975); *Gardner v. State*, 396 A.2d 303, 309–10 (Md.Ct. Spec.App.1979); Annot., 91 A.L.R.2d 700, 730–33 (1963); Developments in the Law, *Criminal Conspiracy*, 72 Harv.L.Rev. 920, 972–74 (1959).

8. 12 U.S.C.M.A. 398, 30 C.M.R. 398 (1961), *rev'g*, 30 C.M.R. 501 (A.B.R.1960).

9. *United States v. Musgrave*, 483 F.2d 327 (5th Cir.), *cert. denied*, 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed.2d 315 (1973); *United States v. Strother*, 458 F.2d 424, 426 (5th Cir.), *cert. denied*, 409 U.S. 1011, 93 S.Ct. 456, 34 L.Ed.2d 305 (1972); *Rosecrans v. United States*, 378 F.2d 561 (5th Cir. 1967).

spiracy before the acquittal of the only other alleged conspirator. The court said that "a plea of guilty is a judicial admission of the truth of the factual allegations of the indictment. Therefore, a person represented by competent counsel who pleads guilty and is sentenced, as occurred with Strother, should not thereafter be permitted to repudiate his solemn admission of guilt." 458 F.2d at 426 n.3. The Government urges that we apply the same rule to Gates. We decline to do so, however.

The result in *Strother*—denying relief because of the conclusiveness of the petitioner's own guilt as evidenced by his plea—rests firmly on the foundation provided by *Platt* and *Rosecrans*, namely, that the outcome of a different trial does not necessarily impeach the verdict in the first one. When, however, *Platt* is rejected, as the Court of Military Appeals has done, it makes no difference whether Gates pleaded guilty or was found guilty beyond a reasonable doubt by triers of fact. *Cf. United States v. Myers*, 45 C.M.R. 690 (A.C.M.R. 1972). Neither is more persuasive than the other as to the guilt of Lawrence, on which we are required to focus. *Strother* simply is inapposite. Because the only other conspirator has been acquitted of the offense of conspiracy, Gates' conviction of that offense cannot stand. Cases cited in note 6, *supra*. The findings of guilty of Charge I must be set aside.[10] We will reassess the sentence and, despite appellee's urging to the contrary, reduce it appropriately.

■ The findings of guilty of Charge I and its specification are set aside and the charge is dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the error noted and the entire record, the Court affirms only so much of the sentence as provides for a bad-conduct discharge, confinement at

hard labor for nine months, and forfeiture of all pay and allowances.

Judge WATKINS and Judge LEWIS concur.

---

10. Appellee has not cited to us any authority for the proposition that appellant should not benefit from his own failure to testify. However, in this connection we note that (a) it is possible that Lawrence would have been acquitted on the merits even if Gates had testified, since Lawrence testified that there was no conspiracy and that he possessed the equipment when found because Gates was selling it to him; (b) the trial counsel might have preserved Gates' conviction of conspiracy if, on his failure to testify, he had sought a disposition of the conspiracy charge against Lawrence on other than the merits instead of attempting to prove the charge without his only direct witness; and, (c) Gates has been separately and additionally punished for his refusal to testify (see note 5, *supra*).